## HULL, ADMINISTRATRIX OF HULL, &c. v. PHILA-DELPHIA & READING RAILWAY COMPANY.

CERTIORARI TO THE COURT OF APPEALS OF THE STATE OF MARYLAND.

No. 151.    Argued January 16, 1920.—Decided April 19, 1920.

The terms "employee" and "employed" in the Employers' Liability Act are used in their natural sense, importing the conventional relation of employer and employee.  P. 479.

Under an agreement for through freight service between two railroads, each retained control of its own train crews while on the other's line, subject to regulations, orders and discipline imposed by the other for the purpose of coördinating their movements to its own operations and for insuring safety and furthering the general object of the agreement; and the acts of each company's employees while on the line of the other were performed as part of their duty to their general employer.  *Held,* that an employee of one company did not become an employee of the other, within the meaning of the Employers' Liability Act, while so operating on the other's line.  *Id.*

*North Carolina R. R. Co.* v. *Zachary,* 232 U. S. 248, distinguished.

132 Maryland, 540, affirmed.

THE case is stated in the opinion.

*Mr. Charles D. Wagaman,* with whom *Mr. Omer T. Kaylor* and *Mr. Frank G. Wagaman* were on the brief, for petitioner:

Where one in the general service of another performs work in which that other and a third person are both interested, he remains the servant of that other or becomes the servant of the third person according as the work in its doing is the work of that other, or is, in its doing, the work of the third person.  And this principle is true no matter who hires, pays or has the power to discharge the servant.  *Standard Oil Co.* v. *Anderson,* 212 U. S. 215; *Murray* v. *Currie,* L. R. 6 C. P. 24; *Rourke* v.

*White Moss Colliery Co.*, L. R. 2 C. P. Div. 205 (1877); *Byrne* v. *Kansas City &c. Ry. Co.*, 61 Fed. Rep. 605; *Donovan* v. *Construction Syndicate*, [1893] 1 Q. B. 629; *Powell* v. *Construction Company*, 88 Tennessee, 692; *Miller* v. *Railroad Company*, 76 Iowa, 655.

The law imposes upon a railroad corporation the non-delegable duty of the operation of its road. *Central Transportation Co.* v. *Pullman's Palace Car Co.*, 139 U. S. 24.

One who performs the non-delegable duty of another with the knowledge and assent of that other becomes the employee of him for whom he is performing the work. *Atlantic Coast Line R. R. Co.* v. *Treadway's Administratrix*, 120 Virginia, 739.

Responsibility of one for the manner of the performance of the work of another always creates the relation of employee and employer. *North Carolina R. R. Co.* v. *Zachary*, 232 U. S. 248.

*Mr. Henry H. Keedy, Jr.*, for respondent, relied on the following:

*Robinson* v. *Baltimore & Ohio R. R. Co.*, 237 U. S. 84; *Chicago & Alton R. R. Co.* v. *Wagner*, 239 U. S. 452; *Fowler* v. *Pennsylvania R. R. Co.*, 229 Fed. Rep. 375; *Missouri, Kansas & Texas Ry. Co.* v. *West*, 38 Oklahoma, 581; *Little* v. *Hackett*, 116 U. S. 366; *Bentley, Shriver & Co.* v. *Edwards*, 100 Maryland, 652; *Quarman* v. *Burnett*, 6 M. & W. 499; *Zeigler* v. *Danbury &c. R. R. Co.*, 52 Connecticut, 543; *Tierney* v. *Syracuse &c. R. R. Co.*, 85 Hun, 146; *Sullivan* v. *Tioga R. R. Co.*, 112 N. Y. 643; *Bosworth* v. *Rogers*, 82 Fed. Rep. 975; *Hamble* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 164 Fed. Rep. 410; *Phillips* v. *Chicago, Milwaukee & St. Paul Ry. Co.*, 64 Wisconsin, 475; *McAdow* v. *Kansas City Western Ry. Co.*, 164 S. W. Rep. 188; *Kastl* v. *Wabash R. R. Co.*, 114 Michigan, 53; Labatt, Master & Servant, 2d ed., 83, note c; *P. W. & B. Ry. Co.* v. *Bitzer*, 58 Maryland, 372; *Delaware, Lackawanna &*

*Western R. R. Co.* v. *Hardy,* 59 N. J. L. 35; *Morgan* v. *Smith,* 159 Massachusetts, 570; *Berry* v. *New York Central R. R. Co.,* 202 Massachusetts, 197.

MR. JUSTICE PITNEY delivered the opinion of the court.

This was an action brought in a state court of Maryland under the Federal Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. 65, as amended April 5, 1910, c. 143, 36 Stat. 291, by petitioner as administratrix of John M. Hull, deceased, to recover damages because of his death occurring, as alleged, while he was employed by defendant in interstate commerce. The trial court directed a verdict in favor of defendant, the Court of Appeals of Maryland affirmed the resulting judgment upon the ground that the deceased at the time he was killed was not in the employ of defendant within the meaning of the act of Congress, 132 Maryland, 540; and upon this federal question the case is brought here by certiorari.

The pertinent facts are not in dispute. John M. Hull, at the time he was killed and for a long time before, was in the general employ of the Western Maryland Railway Company, an interstate carrier operating, among other lines, a railway from Hagerstown, Maryland, to Lurgan, Pennsylvania, at which point it connected with a railway owned and operated by defendant, the Philadelphia and Reading Railway Company, which extended from Lurgan to Rutherford, in the same State. Through freight trains were operated from Hagerstown to Rutherford over these two lines, and Hull was employed as a brakeman on such a train at the time he received the fatal injuries. On the previous day a crew employed by the Western Maryland Railway Company, and of which he was a member, had taken a train hauled by a Western Maryland engine from Hagerstown to Rutherford, and at the time in question the same crew was returning with a train from Rutherford

to Hagerstown. Before starting they received instructions from the yardmaster at Rutherford (an employee of defendant company) as to the operation of the train, including directions to pick up seven cars at Harrisburg. They proceeded from Rutherford to Harrisburg, stopped there for the purpose of picking up the seven cars, and while this was being done Hull was run over and killed by one of defendant's locomotives.

The through freight service was conducted under a written agreement between the two railway companies, which was introduced in evidence and constitutes the chief reliance of petitioner. Its provisions, so far as they need to be quoted, are as follows:

"2. Freight trains to run through between Hagerstown and Rutherford in both directions and each Company agrees to supply motive power in the above proportions [based upon mileage] so as to equalize the service performed.

\*       \*       \*       \*       \*       \*       \*       \*

"4. Crews of each road to run through with their engines over the line of the other Company.

"5. Each Company to compensate the other for the use of the other's engines and crews on their line at the following rates per hour:  .  .  .  Time to begin at Rutherford and Hagerstown when crew is called for.  .  .  .  Time to cease when the engines arrive on the fire track at Rutherford and Hagerstown.  .  .  .

"6. The division of earnings of the traffic not to be disturbed or in any way affected by this arrangement.

"7. Each Company to furnish fuel and other supplies to its own engines and crews; any furnished by one to the other to be upon agreed uniform rates.

\*       \*       \*       \*       \*       \*       \*       \*

"9. Neither Company to be expected to do the engine cleaning and wiping for the other; where done, a charge of seventy-five (75) cents per engine to be made.

"10. Each Company to be responsible and bear all damage and expenses to persons and property caused by all accidents upon its road.

*　　*　　*　　*　　*　　*　　*　　*

"16. Each Company to relieve and return as promptly as practicable the engines and crews of the other at ends of runs.

"17. Each Company to have the right to object and to enforce objection to any unsatisfactory employee of the other running upon its lines.

"18. All cases of violation of rules or other derelictions by the employees of one Company while upon the road of the other shall be promptly investigated by the owning Company, and the result reported to the employing Company, with or without suggestions for disciplining, the employing Company to report to the other the action taken.

"19. Accident reports on prescribed forms to be promptly made of all such occurrences, and where a crew of one Company is operating upon the road of the other, a copy must be sent to the proper officer of each Company.

"20. Employees of each Company to be required to report promptly, on notice, to the proper officer of the other, for investigations of accidents, etc., the fullest coöperation to be given by the one Company to the other in all such matters.

"21. The employees of each Company while upon the tracks of the other shall be subject to and conform to the rules, regulations, discipline and orders of the owning Company."

We hardly need repeat the statement made in *Robinson v. Baltimore & Ohio R. R. Co.*, 237 U. S. 84, 94, that in the Employers' Liability Act Congress used the words "employee" and "employed" in their natural sense, and intended to describe the conventional relation of employer and employee. The simple question is whether, under the

facts as recited and according to the general principles applicable to the relation, Hull had been transferred from the employ of the Western Maryland Railway Company to that of defendant for the purposes of the train movement in which he was engaged when killed. He was not a party to the agreement between the railway companies, and is not shown to have had knowledge of it; but, passing this, and assuming the provisions of the agreement can be availed of by petitioner, it still is plain, we think, from the whole case, that deceased remained for all purposes— certainly for the purposes of the act—an employee of the Western Maryland Company only. It is clear that each company retained control of its own train crews ; that what the latter did upon the line of the other road was done as a part of their duty to the general employer; and that, so far as they were subject while upon the tracks of the other company to its rules, regulations, discipline, and orders, this was for the purpose of coördinating their movements to the other operations of the owning company, securing the safety of all concerned, and furthering the general object of the agreement between the companies. See *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 226.

*North Carolina R. R. Co.* v. *Zachary,* 232 U. S. 248, is cited, but is not in point, since in that case the relation of the parties was controlled by a dominant rule of local law, to which the agreement here operative has no analogy.

The Court of Appeals of Maryland did not err in its disposition of the federal question, and hence its judgment is

*Affirmed.*

MR. JUSTICE CLARKE, dissenting.

The Western Maryland Railroad Company owned a line of railroad, extending from Hagerstown, Maryland, to Lurgan, where it connected with the line of the Reading

Company, extending to Rutherford, in Pennsylvania. The two companies entered into a contract by which through freight trains, made up and manned by crews primarily employed by either, should run through over the rails of the other company to Rutherford or Hagerstown, as the case might be. A crew from either line, arriving at the terminus of the other should return with a train made up by the company operating the latter—together with any cars which might be "picked up" on the way.

Thus, for the purposes of operation, the line over which train crews worked was 81 miles in length, 34 miles of Western Maryland track and 47 miles of Reading track, and the relation of the men to the company, other than the one which originally employed them, while on its line, was defined by the contract quoted from in the opinion of the court.

Five of the paragraphs of this contract seem to me decisive of what that relation was, and of this case, viz:

5. Each company to pay the other an agreed compensation for the service of its engines and crews while on its line.

"10. Each Company to be responsible and bear all damage and expenses to persons and property caused by all accidents upon its road."

"17. Each Company to have the right to object to *and to enforce objection to* any unsatisfactory employee of the other running upon its lines.

"18. All cases of violation of rules or other derelictions by the employees of one Company while upon the road of the other shall be promptly investigated by the owning Company, and the result reported to the employing Company, *with or without suggestions for disciplining*, the employing Company to report to the other the action taken."

"21. *The employees of each Company while upon the* ·

*tracks of the other shall be subject to and conform to the rules, regulations, discipline and orders of the owning Company."*

The deceased brakeman, Hull, was killed on the Reading tracks at Harrisburg, thirty miles away from any Western Maryland track, by the alleged negligence of a Reading engineer, when engaged, under the direction of a local Reading yardmaster, in "picking up" cars to be added to a train which was made up by the Reading Company at Rutherford and dispatched by Reading officials from that terminal.

Thus, when he was killed, Hull was working on the Reading Railroad, subject to the "rules, regulations, discipline and orders" of the Reading Company and at the moment was acting under specific direction of a Reading yardmaster. The Reading Company was paying for the service which he was rendering when he was killed, it had authority to cause his discharge if his service was not satisfactory to it (paragraphs 17 and 18 of the contract, *supra*), and it had specifically contracted to be responsible for all damage to persons and property caused by accidents on its line growing out of the joint operation.

It is admitted that the service he was rendering was in the movement of interstate commerce, but upon the facts thus stated it is concluded in the opinion, that he was not within the scope of the act providing that "Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury *while he is employed* by such carrier in such commerce, or, in case of the death," etc., (35 Stat. 65, c. 149, § 1).

I cannot concur in this decision of the court for the reason that the case seems to me to be ruled by a conclusion as to the applicable law, stated in a strongly reasoned opinion in *Standard Oil Co.* v. *Anderson*, 212 U. S. 215, in this paragraph:

"One may be in the general service of another, and,

nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation."

By the contract of hiring Hull was in the general service of the Maryland Company, but "by his consent and acquiescence," he was transferred to the service of the Reading Company whenever his train passed on to its tracks. From that moment until his return to the Maryland Company's tracks again he was engaged exclusively in the work of the Reading Company, that company paid for his services, he was under its "rules, regulations, discipline and orders," and it had authority to cause his discharge if his service was not satisfactory. He was under the control of that company as to what he was to do and as to the details of the manner of doing it as completely as if he had no other employer. He ceased for the time being to be the servant of the Maryland Company and became the servant of the Reading Company (212 U. S. 215, 224).

The Federal Employers' Liability Act does not require that a person shall be in the exclusive employ of a railroad common carrier in order to come within its scope. It provides that such carrier shall be "liable in damages to any person suffering injury *while he is employed [engaged] by such carrier in such commerce*," and it is impossible for me to accept the conclusion that Hull, when in the pay of the Reading Company, assisting in operating Reading interstate trains on Reading tracks, under the direction solely of Reading officials, general and local, was not "employed" by it in interstate commerce, within the meaning of this provision.

We are not dealing here with mere words or with merely "conventional relations," but with very serious realities. Enacted as the Federal Employers' Liability Act was to bring the United States law up to the humanitarian level

of the laws of many of the States, by abolishing the unjust and irritating fellow servant rule, by modifying the often harsh contributory negligence rule, and by otherwise changing the common-law liability of interstate rail carriers to their employees, it should receive a liberal construction to promote its important purpose. Its terms invite the application of the rule, widely applied by other courts and clearly approved by this court, in the case cited, that a man may be in the general service of one, and also, with respect to a part of his service—to particular work— be in the service of another employer, so that he becomes for the time being the servant of the latter "with all the legal consequences of the new relation." The line of demarcation could not be more clearly drawn than it was in this case, and the rule seems to me to be sharply and decisively applicable.

In the opinion of the court it is said: "It is clear that each company retained control of its own train crews." Upon the contrary, it seems to me, it is clear that neither company retained any control whatever over the crews primarily employed by it while they were on the line of the other company.—"21. The employees of each Company while upon the tracks of the other shall be subject to and conform to the rules, regulations, discipline and orders of the owning Company," was the contract between the two companies under which they were operating when Hull was negligently killed.