## Zimmerman v. Western Union Telegraph Co., Appellant.

*Workmen's Compensation Law—Federal Employers' Liability Act—Interstate railroads—Injuries to employees—Joint employees —Contracts fixing liability.*

The liabilities and obligations of interstate railroads to make compensation for personal injuries, suffered by their employees, while engaged in interstate commerce, are regulated both inclusively and exclusively by the Federal Employers' Liability Act. Liabilities imposed by that act cannot be escaped by carriers engaged in interstate commerce, either by contracts or by operation of state laws.

An employee injured while engaged in interstate commerce as the joint employee of an interstate railroad and the Western Union

Telegraph Company is entitled to the benefit of the Federal Employers' Liability Act and that act, wherever it does apply, excludes the benefits and the operation of the Pennsylvania Workmen's Compensation Act.

Argued October 25, 1920.    Appeal, No. 17, Oct. T., 1920, by defendant, from judgment of C. P. Center County, May T., 1919, No. 91, affirming award of Workmen's Compensation Board. in the case of Frederick A. Zimmerman v. Western Union Telegraph Company.    Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.    Reversed.

Appeal from Workmen's Compensation Board.    Before QUIGLEY, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the appeal and entered judgment for the plaintiff in the sum of $93.25 and costs.    Defendant appealed.

*Error assigned* was dismissing the appeal and entering judgment for the plaintiff.

*Reese H. Harris,* of *Knapp, O'Malley, Hill & Harris,* and with him *Francis R. Stark,* for appellant.—The maintenance of a telegraph line used by a railroad in its interstate business is interstate commerce: Deal v. Coal & Coke Ry. Co., 215 Fed. 285; Pederson v. D., L. & W. R. R. Co., 229 U. S. 146.

One who is engaged in interstate commerce is not entitled to the benefits of the State Workmen's Compensation Laws: N. Y. C. R. R. Co. v. Winfield, 244 U. S. 147.

A joint employee of two companies, one an interstate railroad, and the other not, can recover under the Federal Employers' Liability Act: Oliver v. N. P. Ry. Co., 196 Fed. 432; Ry. Co. v. West, 232 U. S. 682.

No appearance and no printed brief for appellee.

OPINION BY PORTER, J., July 14, 1921:

The plaintiff filed a petition with the Workmen's Compensation Board for compensation for personal injuries alleged to have been received while in the employ of the Western Union Telegraph Co. The case was referred to the referee, who found in favor of the claimant. The defendant appealed to the compensation board from the conclusion of law of the referee, which board affirmed the referee's award, which finding was, upon appeal to the Court of Common Pleas of Centre County, affirmed by that court.

The plaintiff was at the time of his injury engaged in the work of maintenance and repair of a telegraph line situated upon the right-of-way of and owned by the New York Central Railroad Co., and sustained his injury while lifting on a pole to replace one in a telegraph line which carried a number of wires, some of which were used exclusively by the railroad company to direct and control its trains operated in interstate commerce, and the remaining wires were used by the Western Union Telegraph Co. for the purposes of a commercial telegraph system. The referee found that the rights of the parties were to be determined under the provisions of a contract entered into, on June 1, 1907, between the New York Central Railroad Co. and the Western Union Telegraph Co., the provisions of which contract are extensively set forth in the findings of the referee. This contract, although called a lease, did not give to the telegraph company the exclusive possession or control of the telegraph lines, nor did it relieve the railroad company from the obligation to participate in the work of maintaining, reconstructing and repairing the lines. The telegraph company was to furnish all materials required in and about the construction and reconstruction of said lines at some station on the lines of the railroad company, the railroad company was to furnish the necessary unskilled labor to dig holes, setting and resetting poles, etc., the telegraph company to furnish all skilled labor;

the lines to be at all times under the supervision and direction of a joint superintendent of telegraph; the cost of all labor and materials to be paid in equal proportions by the parties to the agreement, unless the work or material was for the sole benefit of either party. The railroad company and the telegraph company, on January 1, 1910, entered into a supplemental agreement, modifying, for their mutual convenience, the manner in which the maintenance and repair of the telegraph lines should be performed. Under the provisions of this supplemental agreement the number and size of gangs to be employed on joint work was to be determined by the joint superintendent of telegraph, subject to the approval of the superintendent of construction of the telegraph company and the general manager of the railroad company. The joint superintendent of telegraph is appointed on the nomination of the railroad company, when confirmed by the telegraph company, and subject to discharge by either of the contracting parties, but neither can appoint a successor without the consent in writing of the other; the companies contribute equally to the payment of his salary, and he is at all times subject to the above named superior officers of the companies. He has absolute charge of the general foreman and foremen of all gangs. "Regular gangs to be carried on the payroll of the railroad company and their wages and subsistence paid by the railroad company, in the first instance, and the telegraph company to organize special gangs and carry them on its pay roll and their wages and subsistence paid by that company in the first instance, such forces to perform, under the supervision of the joint superintendent, all the work contemplated under the contract, such forces being privileged for exclusive work by either party when it does not interfere with their employment on contract work; wages and expenses of exclusive work, or work for third parties to be charged to interested party before making the division hereinafter provided for, viz: monthly, or oftener if agreed, the telegraph

company shall pay the railroad company fifty per cent and the railroad company shall pay the telegraph company fifty per cent of the amount of the pay rolls and subsistence expenses paid in the first instance by the other party, after deducting the amounts exclusively chargeable to each company or to third parties." Among the classes of work which were to be considered as done exclusively for one or the other of the parties and to be accordingly charged were, constructing and cutting in and out of offices of exclusive commercial wires, except where joint wires are insufficient; constructing and cutting in and out of exclusive railroad wires in excess of allowance of railroad wires; and placing, maintaining and cutting in and out of offices railroad company's exclusive railroad signals, cables and local telephone wires.

The referee found that the plaintiff was employed by A. B. Taylor, the joint superintendent of telegraph, under the contract, and that he was employed as a member of a "regular gang," carried upon the pay roll of and paid by the railroad company. He also found that the New York Central Railroad Co. was a common carrier, engaged in interstate commerce, and that if the New York Central Railroad Co. was either jointly or severally liable to the plaintiff, then the work in which the plaintiff was engaged entitled him to the benefit of the Federal Employers' Liability Act, which remedy was exclusive, and that there could be no recovery under the state statute. The referee found, however, that under the provisions of section 9 of the contract between the railroad company and the telegraph company, the plaintiff, although he was carried upon the pay rolls of the railroad company and by that company paid, must be held to be the sole employee of the telegraph company, and upon that ground awarded compensation for the injury.

The ninth paragraph of the contract, to which the referee gave the effect above stated, provides: "It is a condition of this contract that the railroad company is

not to be responsible for, and the telegraph company hereby covenants and agrees to save the railroad company harmless from and indemnify it against all loss or damage of any kind arising from injury to the person, or damage to the property of any officer or employee of the telegraph company or any contractor with the telegraph company while on the premises of the railroad company and engaged in the telegraph company's business......
The telegraph company expressly covenants and agrees that the joint superintendent and all other persons engaged in the work in this agreement contemplated, whether provided or paid by the telegraph company or the railroad company, shall be deemed for the purposes of this contract to be the servants of the telegraph company, except when engaged in the work of transmitting messages for the railroad company and of constructing and maintaining signal wires, cables, and telephone wires for the railroad company......and the telegraph company assumes all liability for and agrees to indemnify and save harmless the railroad company against, of and from all loss, damage or injury, of or to persons or property sustained by the parties hereto, or either of them, by the said servants or any of them, or by third parties, arising out of the negligent or other acts or omissions of the said servants, or out of defects in the material furnished by the telegraph company."

We cannot construe this section of the contract to have the effect of making the employees of the railroad company, while engaged in repair of the telegraph lines which the railroad company owned and which it and the telegraph company were operating for their common benefit and to the maintenance and repair of which they were, under the terms of the contract, equally bound to contribute, the sole employees, for all purposes, of the telegraph company. It was a covenant of indemnity. In the first part of the covenant the telegraph company undertook to indemnify the railroad company against loss or damage arising from injury to the person, or damage

to the property of any officer or employee of the telegraph company, and all damages to the property of the telegraph company, caused in any manner by the act or acts of the railroad company, its servants or agents, whether through their negligence or not. The following covenants of the section provided that, "for the purposes of this contract," all persons engaged in the work contemplated by the agreement "shall be deemed to be the servants of the telegraph company." The effect of this was, as between the parties, to make the men who were engaged in the work contemplated by the contract "employees of the telegraph company" within the meaning of the opening covenant of the section, and the telegraph company would thus be obliged to indemnify the railroad company for any damage it might be called upon to pay for injury to any of the men engaged in such work caused by the negligence of employees of the railroad company who had no connection with the work in which the telegraph company had any interest. The concluding covenants of the section would require the telegraph company to indemnify the railroad company for any loss, damage or injury "arising out of the negligent or other acts or omissions" of the men engaged in the maintenance and repair of the telegraph lines, or out of defects in the material furnished by the telegraph company. It was a covenant to indemnify the railroad company against liability for the torts of the persons engaged in the maintenance and repair of the telegraph lines.

If it be assumed, however, that it was the intention of the parties, by section 9 of the contract, to relieve the railroad company from liability for any injury sustained by members of the "regular gangs" which under the provisions of the contract it was required to furnish in maintaining and repairing the telegraph lines which it owned and of some wires in which system it had the exclusive use, it cannot be permitted to have the effect of relieving the railroad company from its liability under the

Federal Employers' Liability Act of April 22, 1908, if in the absence of such a covenant the liability would have arisen. The contract in this case was entered into before the adoption of the Federal Employers' Liability Act, the parties cannot, therefore, be charged with an attempt to evade the law. If the plaintiff was an employee of the Western Union Telegraph Co. and also of the New York Central Railroad Co., a railroad common carrier engaged in interstate commerce, the latter could not exempt itself from the liability imposed by the Employers' Liability Act, by any contract with the telegraph company: Oliver v. Northern Pacific Ry. Co., 196 Federal 432; Robinson v. Baltimore & Ohio R. R. Co., 237 U. S. 84. In Hull v. Phila. & Reading Ry. Co., 252 U. S. 475, it appeared that Hull was employed generally by the Western Maryland Railroad Co.; he was killed, at Harrisburg, Pa., while operating a train upon the Philadelphia & Reading Ry. Co., which train had been made up on the Philadelphia & Reading Ry. The contract between the Western Maryland and the Philadelphia & Reading Ry. Co. provided that, "Each company to be responsible and bear all damages and expenses to persons and property caused by all accidents upon its road." It was held that, in the Employers' Liability Act, Congress used the words "employee" and "employed" in their natural sense, and intended to describe the conventional relation of employer and employee; that Hull was not a party to the contract between the railroads and that while upon the Reading tracks he remained for the purpose of the act an employee of the Western Maryland Co. only. These authorities conclusively determine that a railroad company engaged in interstate commerce cannot, when an employee engaged in such commerce is injured, escape the liability imposed by the Federal Employers' Liability Act, by showing that it had by a contract with some other party having a common interest in the work in which the employee was engaged, shift the responsibility to the other party. They also established

that where the party injured was the joint employee of two companies, one of which was a railroad company engaged in interstate commerce and the other not such a company and, for that reason not within the act, if the injury occurs while the employee is engaged in interstate commerce, the employee is entitled to the benefit of the Federal Employers' Liability Act.

The liabilities and obligations of interstate railroad carriers to make compensation for personal injuries suffered by their employees, while engaged in interstate commerce, are regulated both inclusively and exclusively by the Federal Employers' Liability Act; no room exists for state regulation, even in respect of injuries occurring without fault, as to which the Federal Act provides no remedy: New York Central Railroad Co. v. Winfield, 244 U. S. 147; Erie R. R. Co. v. Winfield, 244 U. S. 170; North Carolina R. R. Co. v. Zachary, 232 U. S. 148. An employee of an interstate railroad company who is engaged in repairing a telegraph line owned and maintained by it and used to direct and control interstate trains is entitled to the benefits of the Federal Employers' Liability Act: Pederson v. Delaware, Lackawanna & Western R. R. Co., 229 U. S. 146; Deal v. Coal & Coke Ry. Co., 215 Federal Rep. 285. The referee having found that the work of reconstruction and repair of the telegraph line in which the plaintiff was engaged at the time of the injury involved the maintenance of the telegraph line of the New York Central Railroad Co., used in the operation and control of interstate trains and necessary to such operation, it follows that plaintiff was engaged in a service essential to interstate commerce. The plaintiff is entitled to the benefits of the Federal Employers' Liability Act, which must govern, to the exclusion of the statutes of this State.

The judgment of the court below and the award of the Workmen's Compensation Board are reversed, and the record is remitted to the board for further hearing and determination as prescribed by law.