UNITED STATES v. NEW YORK CENT. R. CO.

Civ. No. 1273.

District Court, N. D. New York.

Sept. 4, 1946.

Irving J. Higbee, U. S. Atty., of Syracuse, N. Y. (T. Joseph Coffey, of Auburn, N. Y., of counsel), for plaintiff.

Hiscock, Cowie, Bruce, Lee & Mawhinney, of Syracuse, N. Y. (Gerald H. Henley, of Syracuse, N. Y., of counsel) for defendant.

BRENNAN, District Judge.

The plaintiff bases this action upon the provisions of the Safety Appliance Acts, 45 U.S.C.A. §§ 1–16. The facts are not in dispute and may be briefly summarized as follows:

The defendant, hereinafter referred to as the "Central" is a common carrier engaged in interstate commerce by railroad, and maintains a line of railroad track from the village of DeWitt, New York to the village of Rotterdam Junction, New York, where it connects with the tracks of the Boston and Maine Railroad Company, hereinafter referred to as the "Maine".

Prior to the date of the alleged violation which is the basis of this action, the Central and the Maine entered into a contract, which insofar as is material here provided an arrangement whereby trains composed of "through freight" destined for Maine territory was made up by the Central at DeWitt, New York, and transported by Central equipment in trains operated by Central crews over the tracks of the Central to Rotterdam Junction, and from Rotterdam Junction over the tracks of the Maine company to Mechanicville, a point about 20 miles from the actual junction of the two roads. The agreement contemplated the actual physical operation and control of such trains by the Central crews throughout their journey from DeWitt to Mechanicville, except, of course, that the movement of the trains over the Maine tracks after they passed Rotterdam Junction was subject to the supervisory control of the Maine employees, such as dispatchers, etc. The agreement further provided that the Maine company would in turn collect at Mechanicville "through freight" destined for Central territory, and to arrange that the same locomotives and crews bringing the "through freight" to Mechanicville, as above described, would convey the "through freight" so collected by the Maine company on its westward journey from Mechanicville to Rotterdam Junction, where it entered Central territory and upon Central tracks and became subject solely to Central control.

The agreement attempted to provide that "through freight" trains described above should be considered as Maine trains while passing over the Maine trackage in either direction between Mechanicville and Rotterdam Junction; that same should be entirely under Maine control; that the crews should be considered as Maine employees and that the traffic hauled should be considered as that of the Maine company.

On April 29, 1943, a certain Atchison, Topeka and Santa Fe Railroad box car, No. 116,472, was found to have a defective running board in violation of Title 45 U.S.C.A. § 11. The discovery of this condition was made at Mechanicville, while said box car was a part of a "through freight" train made up at DeWitt, New York, and physically operated as above stated by a Central crew from DeWitt to Mechanicville.

It is the plaintiff's contention that the defendant by reason of the defect above described became liable to the penalty prescribed in 45 U.S.C.A. § 13, inasmuch as it used, hauled, or permitted to be used or hauled on its lines a car improperly equipped under the applicable provision of law.

The defendant raises no issue as to the facts, but in substance contends that no liability may be assessed against it, because it was not "—using, hauling or permitting to be used or hauled on its lines—" the defective car in question; that its responsibility under the Safety Appliance Act ended when the train, including the defective car, passed from its tracks to the tracks of the Maine at Rotterdam Junction.

The ultimate question to be determined is whether or not a common carrier is liable for violation of the Safety Appliance Act occurring while it, with legal permission, is actually hauling a train consisting in part of a defective car over the tracks

of a connecting carrier with whom it has contracted to the effect that the train shall be considered a train of such connecting carrier. The decision must rest upon the application of the law to the undisputed facts.

■ The purpose of the Act is to protect employees and the public and it must be construed in the light of its remedial purposes. Lilly v. Grand Trunk R. Co., 317 U.S. 481, at page 486, 63 S.Ct. 347, 87 L.Ed. 411.

That the Central was "—using, hauling —" the defective car on the occasion seems obvious. It became a part of the train at the instance of Central directions. It was moved by Central equipment, manned by Central employees. Its movement was an obligation of the Central to the shippers. Was it being used or hauled upon "—its line—" as these words are used in the statute? The case of Philadelphia & Reading Ry. Co. v. United States, 3 Cir., 191 F. 1, seems to be the only cited authority in point. It holds in substance that an actionable violation of the Act occurs when an interstate railroad carrier hauls a defective car in its own train, in the control of its own employees, over a line upon which it had a legal right to conduct its interstate traffic.

■ The defendant urges that the decision and reasoning in the above case is contrary to the opinions in later cases involving a determination of employment in actions under the Employers' Liability Act, such as Linstead v. Chesapeake & Ohio Ry., 276 U.S. 28, 48 S.Ct. 241, 72 L. Ed. 453. An examination of such cases including the case of Hull v. Philadelphia & R. Ry., 252 U.S. 475, 40 S.Ct. 358, 64 L. Ed. 670, which is distinguished in the Linstead case, leads to the conclusion that cases involving the application of the Employers' Liability or Workmen's Compensation Acts are not controlling precedents here. Such cases involve the determination of the status of individual employees, and the application of a remedy. General and special employment, the relationship of master and servant, and the determination of whose work is actually being performed are all elements which are particularly applied to such compensatory Acts. (Jones v. George F. Getty Oil Co., 10 Cir., 92 F.2d 255). Here, the statute seeks the prevention of a wrong, and its obligation is absolute. St. Louis, Iron Mountain & Southern Ry. v. Taylor, 210 U.S. 281, 28 S.Ct. 616, 52 L.Ed. 1061; Chicago, B. & Q. Ry. v. United States, 220 U.S. 559, 31 S.Ct. 612, 55 L.Ed. 582.

■ An interpretation of the statute which would exonerate a carrier from liability where it has the actual physical control of the defective car on a line over which it may lawfully pass would detract from its effectiveness. Such interpretation is to be avoided.

■ That the Maine company may also be liable is not of importance here, and the decision of that question is not involved in this litigation.

No late case has been cited by either party in support of their contentions, but the doctrine of the Philadelphia & Reading Ry. Co. v. United States, supra, has been recognized in Gray v. Louisville & N. R. Co., D. C., 197 F. 874; United States v. Southern Ry. Co., D. C., 285 F. 766, and U. S. v. Spokane International Ry. Co., D. C., 30 F.2d 150, and no persuasive argument has been advanced why it should now be abandoned.

■ The actual freight transfer point for the Maine and Central was at Mechanicville. The contract seeks to accomplish such transfer at Rotterdam Junction. Such a result may have been accomplished as between the two contracting parties, but as to this plaintiff the terms of the agreement are of no controlling importance. The obligation of the carrier being absolute, such obligation may not be contracted away nor lost in the intricacies of an operating contract. The question of control and of whose work was being performed are facts which can not be altered by artificial situations created by contract to meet the needs of the connecting carriers.

The plaintiff is entitled to judgment as demanded.