## ROBERTSON v. YAZOO & M. V. R. CO.
### No. 11630.

Circuit Court of Appeals, Fifth Circuit.
Jan. 23, 1947.

R. L. Dent and M. E. Ward, both of Vicksburg, Miss., for appellee.

Wallace W. Ramsey, of Vicksburg, Miss., for appellant.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit, brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., was for damages for personal injuries. The claim was that plaintiff, a general employee of the Cotton Belt, was also, within the rule set forth in Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480, a special employee of the defendant, and that while he was passing through defendant's yard to pick up the Cotton Belt train he was to take out, he was injured by the negligent operation of one of defendant's locomotives. The defenses were: a denial that plaintiff was an employee of defendant; a denial of the charges of negligence; and allegations that defendant's injuries were the result of his own fault.

At the conclusion of all the evidence,[1]

[1] In answer to the question, "Where were you employed at the time of the accident?", plaintiff testified that he was working at the St. Louis Southwestern Railway Co., known as the Cotton Belt, and that he had been employed by it as brakeman for something over five years.

In answer to the question, "At the time this accident occurred in which you were injured, on what road were you operating at that time?", the witness answered, "The Cotton Belt has a run from Brinkley, Arkansas, to Memphis, Tennessee. I was on what we call the Memphis run. We would go over there and turn and come back after we would tie up. We came back to Memphis, and we would go to Brinkley and turn and come back to Memphis and then tie up."

The trains coming into Arkansas from Memphis did not operate all the way over the Cotton Belt tracks. West of the river the trains were operated under the orders and instructions of the Cotton Belt, but after the east side of the river was reached, the train crews were under the jurisdiction of the defendant's yard master. Neither plaintiff nor the other members of his crew had anything to do with making or breaking up in defendant's yards the trains which he and the other members of the Cotton Belt crews took in and out of the yards on their regular run. That is to say, the breaking up, the switching and the assembling in the yards, of cars making up the Cotton Belt trains which he and his crew brought in and took out as trains, the inspection of the air hose connections, etc. was done by defendant's engine foremen and switchmen under the authority of the yard master of the de-

defendant moved for a directed verdict upon the following grounds:

1. The evidence establishes without conflict that the plaintiff was not an employee of the defendant, in consequence whereof the Federal Employers' Liability Act is without application in this case.

2. The evidence affirmatively establishes that the plaintiff was guilty of proximate contributory negligence and in consequence is barred under the laws of the state of Tennessee, lex loci delicto.

The district judge, agreeing with the defendant,[2] directed a verdict and entered judgment on the verdict in its favor. Plaintiff moved for a new trial, on the ground

---

fendant, and it was only before the trains were broken up and after they were assembled as trains that he and the crews handled them on their regular runs into and out of the yards.

The use of defendant's yards, the handling of trains into, in and out of them, and the compensation to be paid defendant for this use were all provided for in a written contract between the Illinois Central and defendant railroad companies, as owners of the yards and terminals, and Cotton Belt, as a user thereof, the provisions of which are clearly and simply written, are plain and unambiguous. In effect, it grants to the Cotton Belt the right to use the tracks and other facilities, as outlined in it, upon a basis of $9.00 per car as to freight cars of the Cotton Belt that are handled through the yards. In effect, it leases to the Cotton Belt certain facilities and privileges, and provides how these facilities and privileges are to be availed of.

As to crews such as that to which plaintiff belongs, the only thing they are required to do is to take the trains of the Cotton Belt, assembled and made up, on their regular runs into and out of the yards. When a train is completed, made up and ready to go out, the yard master, or someone under his supervision, notifies the crew of the Cotton Belt that the train is ready, the Cotton Belt crew then takes charge, and the train is operated by the crew of the Cotton Belt, subject, of course, to being signaled for proper clearance by the yard master.

The defendant had no authority to hire or fire any employee of the Cotton Belt, though it could require the removal of any employee of the Cotton Belt from any particular service in this particular yard in the event his services were obnoxious to defendant. The Cotton Belt crew, of which plaintiff was a member, did no work for the defendant. All the work they did was for the Cotton Belt in the operation of the Cotton Belt trains.

At the time the plaintiff was injured he was on his way to work. He had not been notified to report at this particular time, and his work would have begun thirty minutes prior to the time he was notified his train was ready to go. When he arrived at his place he would perform no service whatever for the Y. & M. V. or Cotton Belt either, until his train had been completely made up by the crew of the Cotton Belt.

[2] In announcing his ruling, he said:

"In ruling on that motion, I am taking as true, of course, all of the evidence that has been offered by the plaintiff and all reasonable inferences therefrom, and in so doing I am of the opinion that the plaintiff in this case was not an employee of the defendant, The Yazoo & Mississippi Valley Railroad Co., so as to make the Employers' Liability Act applicable. It is my judgment that the Hull case, in 252 U.S., in 40 S.Ct., and the Linstead case, in 276 U.S., in 48 S.Ct., are conclusive. The facts in the present case make it clear that the plaintiff was not engaged in any service for the defendant." Then, after setting out the facts, he continued:

"The law is that the right to hire and discharge, to direct the movements and give orders to employees are some of the circumstances covering or tending to prove or disprove employment, as well as the payment of wages, but it may be said that the controlling factor is for whom the work was being done.

"For whom was the employee doing work at the time he was injured? In this particular case the plaintiff was not doing work for the Y. & M. V. The Cotton Belt paid all of his wages, employed him and was the only one who had the right to discharge him. The Y. & M. V. did not pay him anything. On the contrary, the Y. & M. V. simply was paid so much per car for the service the Y. & M. V. rendered to the Cotton Belt and for the use of the facilities of the Y. & M. V. with reference to freight coming through that yard.

"I am unable to see where any service whatsoever was done by the plaintiff for the Y. & M. V. and am therefore of the opinion that he was not an employee of the Y. & M. V. Railroad Company and that the motion to exclude the evidence and direct a verdict for the defendant must be sustained."

that the evidence offered on the trial made out a case for the jury on whether he was defendant's employee, and on the further ground of newly discovered evidence [3] that he was. His motion denied, plaintiff has appealed.

Here, as appellant and appellee agree, the only question for decision is whether the court erred: in directing a verdict on the ground that the evidence established without conflict that plaintiff was not an employee of defendant so as to make the Employers' Liability Act applicable; and in refusing to grant a new trial for newly discovered evidence on that point. Appellant insists that he did. Appellee is as certain that he did not.

We agree with appellee that the district judge was right in holding that Hull v. Philadelphia & R. R. Co., 252 U.S. 475, 40 S.Ct. 358, 64 L.Ed. 670, and Linstead v. Chesapeake & O. R. Co., 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453, are, under the admitted and undisputed facts, conclusive authorities against the plaintiff's claim that, though a general employee of the Cotton Belt, he was at the time of his injury a special employee of defendant. These cases, grounded as they are on the principles clearly and authoritatively laid down in Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480, leave in no doubt that plaintiff's case falls because the evidence not only fails to show that at the time of his injury he was doing the work of the defendant, but, on the contrary, affirmatively shows that he was not. Struck on his way through the yards to take up his work not on a train of and in the service of defendant, but on a train of and in the service of the Cotton Belt, nothing in what he was doing, nothing in the contract between his employer and defendant, made him a special employee of defendant.

The opinion in Standard's case, one of those cases in which the opinion, because of the clear, comprehensive and authoritative way in which it sets out the controlling principles is not just another opinion but a landmark [4] for federal and state courts in the field of law with which it deals, general and special servantship, puts the matter in a nutshell:

"* * * One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence to the service of a third person, so that he becomes the servant of that person, with all the legal consequences of the new relation.

"* * * The master's responsibility cannot be extended beyond the limits of the master's work. If the servant is doing his own work or that of some other, the master is not answerable for his negligence in the performance of it.

"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are, for the time, his workmen. In the second case, he

---

[3] This consisted of an affidavit by one Boggs, chairman of the General Grievance Committee for the Brotherhood of Railroad Trainmen, a labor organization which is the bargaining agency for the conductors, brakemen, yardmen and yard masters of the Cotton Belt, that he would testify: that in the Memphis yards the defendant has charge of Cotton Belt trains and employees, including the brakemen and conductors, and could require them, in addition to their regular train work, to couple and move trains in the yards; that defendant has on occasions required train crews of the Cotton Belt to do such work; and that affiant has made claims for additional compensation against the Cotton Belt on account of such required extra work.

[4] Shepard's U.S.Citations, Case Ed., 1943, p. 2103; 1946 Supp. p. 170.

34

who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still, in its doing, his own work. *To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed,—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.*" (Emphasis supplied)

In Hull's case and in Linstead's case, both cases where a general servant of a particular employer claimed that he had become the special servant of another, the evidence was searched out to discover whose work the servant was doing, and the rule was applied accordingly. In Hull's case, it was found that the plaintiff was doing the work of his general employer, in Linstead's case, that he was not, but, on the contrary, was doing the work of another by whom he had, as to the work he was doing, been specially employed. In Linstead's case, after quoting what has been quoted above from Standard's case, the court said [276 U.S. 28, 48 S. Ct. 243]:

*"Now the work which was being done here by Linstead and his crew was the work of the Chesapeake & Ohio Railway.* It was the transportation of cars, loaded and empty, on the Chesapeake & Ohio Railway between Stevens and Cincinnati. *It was work for which the Chesapeake and Ohio road was paid according to the tariff approved by the Interstate Commerce Commission;* it was work done under the rules adopted by the Chesapeake & Ohio Railway Company; and it was done under the immediate supervision and direction of the trainmaster in charge of the trains running from Stevens to Cincinnati, and that trainmaster was a superior employee of the Chesapeake & Ohio road. * * *

"The case of Hull v. Philadelphia & Reading Railway Co., 252 U.S. 475, 40 S.Ct. 358, 64 L.Ed. 670, which controlled the view of the Circuit Court of Appeals, is to be distinguished from this. * * *

"It was held that Hull was not a servant of the Philadelphia & Reading Company, by which he was killed, but only the servant of the Western Maryland Company. *That was because the work which Hull was doing was the work of the Western Maryland Company, even though it was carried on for a part of the way over the rails of the Philadelphia & Reading Company. The locomotive belonged to the Western Maryland Company, the cars belonged to the Western Maryland Company and the loads that were carried were being carried for the Western Maryland Company, and presumably the rates which were received for the transportation were the receipts of the Western Maryland Company.* In other words, the whole line between Hagerstown and Rutherford was exactly as if it had been jointly owned by the two companies, and jointly used by them for their freight trains. Therefore the work was done by the Western Maryland for itself and the mere transfer of the train owned by the Western Maryland and operated by it on to the rails of the Philadelphia & Reading Railway *did not transfer the relation of the deceased from the general employment of the Western Maryland to a special employment by the Philadelphia & Reading as another master.*

"*In the present case there was such a transfer* and the line over which the transportation was effected and on which the work of transportation was done by the deceased was the line of the Chesapeake & Ohio, *which was master and remained in charge of the operation, with the immediate supervision of the Big Four crew which was lent for the very purpose of doing the work of the Chesapeake & Ohio.*" (Emphasis supplied)

■ These three cases, Standard, Hull, & Linstead, have been many times cited and discussed, their ratio decidendi, their true rationale has been often set out, nowhere better than in Jones' case,[5] with the analysis and application in which we fully agree.

---

[5] Jones v. George F. Getty Oil Co., 10 Cir., 92 F.2d 255.

If, as we have found, the district judge was right in directing a verdict for defendant, it is quite clear that he committed no reversible error, when, in the exercise of his discretion he denied a new trial on the ground of newly discovered evidence.

The judgment was right. It is affirmed.