See also, Tex.Civ.App., 379 S.W.2d 415.

**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, Appellant,**

**v.**

**Robert Lee FRANKS, Appellee.**

**No. 16647.**

Court of Civil Appeals of Texas.

Dallas.

Jan. 28, 1966.

Rehearing Denied Feb. 25, 1966.

W. A. Thie and John B. Webster, Dallas, and Elliott & Nall, Sherman, for appellant.

Helm, Jones & Pletcher, Houston, and Slagle & Kennedy, Sherman, for appellee.

DIXON, Chief Justice.

Appellee Robert Lee Franks sued appellant Missouri-Kansas-Texas Railroad Company, hereinafter called the Katy, under the Federal Employers' Liability Act, Title 45, Sections 51 and 53, U.S.C.A. for damages for personal injuries sustained June 26, 1961 when a caboose in which appellee was riding was derailed.

A jury found negligence and proximate cause issues against appellant, exonerated appellee of negligence and assessed dam-

ages in the amount of $116,250. Judgment on the verdict was rendered for appellee.

Appellant's first, second and fifth points on appeal allege that the trial court erred (1) in overruling appellant's motion to strike the testimony of Dr. Gerald A. King concerning his findings that appellee was dizzy, nervous, irritable and had severe headaches when the doctor admitted that such findings were actually furnished by appellee's wife; (2) in permitting Dr. King, to whom appellee had been sent for examination, to testify that appellee had not been able to work since the accident, which testimony was based only on subjective symptoms and history given to him by appellee; and (5) in permitting Dr. King to testify in response to a hypothetical question based on assumed facts which incorporated the unproven fact that appellee was "happily married".

None of the above points presents reversible error. Appellee's first visit to Dr. King was on October 26, 1962. He himself gave the doctor a history of dizziness, difficulty in breathing, fatigue, headaches, nervousness, pain in his left wrist and a healed fracture of the nose.

Thereafter the doctor saw appellee again on January 10, 1963 and appellee's wife said he was still dizzy, nervous and irritable. Objection was made and sustained as to what appellee's wife said. On this occasion Dr. King not only examined appellee but treated him by giving him trymenicin and equigesic. He diagnosed appellee's head injury as a post-concussion syndrome. The doctor saw appellee again on February 22, 1963. Dr. King's diagnosis was in substance confirmed by Drs. Moorman and Woolf, though the last two named doctors did not agree with Dr. King as to the extent of appellee's disability.

■ Since Dr. King had treated appellee it was permissible for him to recite the history given to him by the patient. Texas Employers Ins. Ass'n v. Morgan, et al, Tex. Civ.App., 187 S.W.2d 603.

■ The hypothetical question propounded to Dr. King was quite lengthy. Appellant's objection was not directed to the assumed fact that appellee and his wife were happily married. It was interjected at the point in the hypothetical question where it was assumed that appellee's conversation had changed, that it had become necessary to pull information out of him and that he had become depressed. The objection did not mention the assumed fact that appellee and his wife were happily married.

The evidence indicates that appellee has been married a number of years. He is still married. His wife accompanied him on one trip to see Dr. King. She could not be present at the trial because she was in the hospital as a result of falling and breaking her hip. We cannot say that the assumption in the hypothetical question that appellee was happily married was an error of such moment, if it was error at all, as would justify a reversal of this judgment. Appellant's first, third and fifth points are overruled.

■ In its fourth point appellant complains because the trial court refused to submit a requested issue which would have inquired whether at the time of his injury the employees on the train in question were not under the direction of appellant.

We see no merit in this point. Appellant was operating its trains with its own train crews over the tracks of the Texas & Pacific Railway Company, hereinafter called the T. & P., from Whitesboro, Texas to Fort Worth, Texas. There was no pleading that appellee was not an employee of appellant railroad. The contract between the two railroads was not introduced into evidence. But the admitted facts leave no doubt as to the status of appellee as an employee. Appellant Katy in effect judicially admitted in the face of requests for admissions that on June 21, 1961 appellee was its employee and that appellee and appellant were engaged in interstate commerce, or in work directly, closely and substantially affecting such commerce.

It is undisputed that the Katy paid a "wheelage" fee to the T. & P. for the use of the latter's tracks. The Katy's superintendent of rules and safety testified that the two railroads "operate jointly over" the tracks in question. The Katy sends its trains over the T. & P. tracks. The train on which appellee was serving as brakeman at the time of injury was a "through" train. Appellant introduced its own rules governing the operation of the train. The rules of the T. & P. were not offered in evidence. At the joint investigation following the derailment Katy officials sat in for the purpose, among others, of seeing that the investigation was held in accordance with the Katy's agreement with its employees.

Appellant says that "this cause is squarely ruled by Linstead v. Chesapeake & Ohio R. Co., 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453." We do not agree. We think that our holding here must be governed by the holding in Hull v. Philadelphia & Reading R. Co., 252 U.S. 475, 40 S.Ct. 358, 64 L.Ed. 670.

In the Linstead case the Supreme Court refused to apply the holding in the Hull case and stated its reasons for so refusing. In Linstead the Big Four Railroad, though it was using its own locomotive, caboose and crew, was really doing the work of the C. & O. on the C. & O.'s tracks. For that reason the brakeman who was killed must be considered an employee of the C. & O., and this was so though the Big Four was paying the salary of the brakeman and had

the right to discharge him. The distinction between the Linstead case and Hull case, as pointed out by the Supreme Court, was that the Western Maryland R. Company, though operating on the tracks of the Philadelphia & Reading Railroad Company, was actually doing its own work, operating its own train, and presumably receiving the prevailing tariff for its work. Under these circumstances Hull was the servant of the Western Maryland Railroad Company, not the servant of the Philadelphia & Reading Railroad Company. The material facts in the case now before us bring our case unquestionably within the holding of the Hull case. Appellant's fourth point is overruled.[1]

Appellant's next nine points, numbered 6 to 14 inclusive, attack the ruling of the court in refusing to submit nine requested special issues. The nine requested issues are all concerned with the question whether appellee violated the operating rules of the T. & P., over whose tracks appellant was operating its train at the time of the accident.

■ As we have stated, the evidence in this case does not include the T. & P. rules. It does include appellant's rules, which were introduced by appellant. It is undisputed that the T. & P. rules and appellant's rules are the same. In fact, the two railroads use the same rule book. The alleged rule violations were submitted in six special issues. To have submitted ap-

---

1. The Katy's superintendent testified that the employees of the Katy are "subject to discharge" and "subject to discipline" by the T. & P. and the T. & P. "has a right to bar" an employee of the Katy until he complies with the T. & P.'s instructions.

We consider that the above testimony is both without probative force and is immaterial to the question under discussion for these reasons:

(1) The testimony is the expression of legal conclusion by a lay witness. The contract between the two railroads was not introduced in evidence. The legal conclusions of the witness that the T. & P. had the right to discharge, discipline and bar the Katy's employees are not

grounded on any fact. In truth the undisputed facts and admissions of appellant show that appellee at the time of the derailment was an employee of appellant doing appellant's work in interstate commerce.

(2) In the opinion in Linstead v. Chesapeake & Ohio R. Co., 276 U.S. 28, 48 S. Ct. 241, 72 L.Ed. 453, heretofore discussed, the Supreme Court held that notwithstanding the fact that the Big Four paid the deceased brakeman and had the right to discharge him, the man was doing the work of the C. & O. at the time and was therefore to be considered an employee of the C. & O. for the purpose of determining liability for his injury.

pellant's requested issues would in effect have twice submitted the question of each of the alleged rule violations. Two submissions of the same issues are not required. Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985. Appellant's Points Nos. 6 to 14 inclusive are overruled.

■ The substance of appellant's fifteenth and twenty-fourth points is that the court erred in refusing to give the jury a restrictive instruction that it could not allow any damages which might be suffered by reason of the disfiguring effect of appellee's crooked nose, which was crooked because appellee had instructed the surgeon so to set it; or by reason of appellee's having suffered 30 per cent disability as a result of frozen feet while in Europe in the Army in 1944.

These points are without merit. Appellee had suffered a fractured nose some years earlier and his nose when set was not straight, but was crooked. His nose was fractured again when the caboose was derailed. Dr. Moorman testified that appellee requested him to set the nose in the same position, that is, crooked, that it was prior to the train accident, so it wouldn't change his appearance. Appellee admitted in the presence of the jury that he had been found by the Federal Government to be 30 per cent disabled because of the condition of his feet as a result of their having been frozen in the Army in 1944.

The court instructed the jury to allow compensation for such past and future pain, etc. suffered as a direct and proximate result of the occurrence in question, that is, the train wreck. The court also instructed the jury not to compensate appellee for past or future physical pain, mental anguish, etc. on account of any bodily condition which appellee may have had before June 26, 1961.

The jury heard Dr. Moorman's testimony about appellee's nose. Appellee did not contradict it. He admitted that he had suffered a prior broken nose and that it had

not been set straight. Presumably the jury obeyed the court's instruction not to consider pain, anguish and earning ability on account of any bodily condition of appellee prior to the train wreck. The requested instruction was unnecessary since the instructions given were adequate to protect appellant in the matter of appellee's crooked nose and the prior condition of his feet. The fifteenth and twenty-fourth points are overruled.

■ Appellant's sixteenth and seventeenth points charge that the damages awarded by the jury were excessive.

Appellee testified that he suffered injuries to his knee, a broken wrist, a broken nose and injuries to his head and lacerations to his arms, hands and eyes. There was other evidence of these injuries. Appellee was unconscious when taken to the hospital and suffered amnesia for three days. He was hospitalized for twenty-eight days. He was in a cast for four or five months. His face is scarred. Appellee further testified that he is subject to dizzy spells and has "blacked out" three times, twice while driving an automobile. He has constant headaches for which he takes drugs. He cannot straighten the wrist which was broken. He is extremely nervous and cannot concentrate and is getting worse, not better. He cannot perform the duties of a brakeman.

He wanted to see if he could perform the duties of a trainmaster, a job which was offered to him on a temporary basis. He rejected the offer because he was told that they could hire him one week and abolish the job the next week. For a while he bought and sold a few cattle but had given that up about a year ago. He unsuccessfully sought employment with the sheriffs of Dallas, Tarrant and Grayson Counties. At the time of the derailment he was 41 years of age, had worked for the railroad for fifteen years and was earning about $7,000 per year. Since the accident he has not been able to hold the job of a brakeman.

Dr. King, who treated appellee, testified that appellee is totally and permanently disabled from working; that his disability is both physical and mental; that he suffered a brain injury which the doctor diagnosed as a post-concussion syndrome; and that he suffered a broken wrist with a non-union of the fracture.

Appellee's friends and co-workers testified that they observed that appellee is extremely nervous and hardly seems to know what he is doing at times. He is not the same man he was before the accident.

Dr. Moorman, called as a witness by appellant, treated appellee on several occasions. An x-ray showed a non-united fracture of the styloid process of the wrist which would have a minimal functional effect. There is some limitation in the motion of the wrist. Dr. Moorman also diagnosed appellee's head injury as a post-concussion syndrome. Dr. Moorman had last seen appellee about three years before the trial and had recommended a gradual return to work for appellee. However, he saw appellee at the time of the trial and stated that appellee's condition had worsened since the last time he had seen appellee.

Dr. Woolf, a neurosurgeon, called by appellant, had examined appellee. He too found a post-concussion syndrome, but said it was not serious. He found no brain damage and nothing to indicate that appellee could not return to his full employment and hoped that he would soon do so.

Appellee went to a Dr. Gardiner, a neurologist in Fort Worth. Dr. Gardiner did not testify but his report of an electroencephalogram was seen by Dr. King. Dr. King said the report indicated that appellee was within limits of normal, however he had seen a normal electroencephalogram with a tumor.

Much larger damage verdicts have been upheld against the attack of excessiveness. In Texas Consolidated Transportation Co. v. Eubanks, Tex.Civ.App., 340 S.W.2d 830 (ref. n. r. e.) an award of $162,500 to a widow and child was upheld for wrongful death of a man more than 63 years of age who was earning $9,000 per year. Other awards which were upheld were $150,000 in Louisiana & A. Ry. Co. v. Mullins, Tex.Civ. App., 326 S.W.2d 263 (ref. n. r. e.); $125,-000 in Allbritton v. Sunray Oil Corp., D.C., 88 F.Supp. 54; $240,760 in City of Fort Worth v. Barlow, Tex.Civ.App., 313 S.W. 2d 906; $157,400 in Texas & New Orleans Railroad Co. v. Flowers, Tex.Civ.App., 336 S.W.2d 907 (ref. n. r. e.); $115,000 in White v. McElroy, Tex.Civ.App., 350 S.W. 2d 249, where appellee was 54 years of age at time of the accident and had been earning approximately $6,000 per year. Appellant's sixteenth and seventeenth points are overruled.

In its eighteenth point appellant asserts error in the refusal by the court to allow in evidence certified records of the Veterans Administration concerning appellee.

The records in question show that in 1948 appellee was admitted to the Veterans Hospital at McKinney, Texas. He was having difficulty in breathing because of an obstruction in his nose. He gave a history of having suffered frozen feet and as a result was drawing 30 per cent disability compensation from the Government.

We do not believe that under the circumstances it was reversible error for the court to exclude the records. There is no showing that the Veterans Administration had given appellee a physical examination during the thirteen years between the time of his discharge from the hospital in 1948 and the date of his accident in 1961. During that time he had held a job as a brakeman for the railroad. Appellee had admitted on cross-examination that he had suffered frozen feet in the Army in Europe in 1944, and that as a result the Federal Government had given him a 30 per cent disability rating since World War II. He admitted that he had previously had trouble in breathing because of an obstruction in his nose. He further admitted that when he signed

his application for employment with the railroad he had stated that he had no physical defects and that he was wrong in making the statement. If the Veterans Administration records had been admitted in evidence they would not have disclosed material facts about appellee's physical condition that he did not admit when questioned on cross-examination by appellant's attorney.[2] Under somewhat similar circumstances our Supreme Court has held that it was not error to exclude the Veterans Administration records. Kainer v. Walker, Tex., 377 S.W. 2d 613, 617. Appellant's eighteenth point is overruled.

■ Appellant's nineteenth and twentieth points claim error because of the submission of issues inquiring whether the train in question just before the accident was being operated at a rate of speed in excess of that at which a person of ordinary prudence would have operated it, and if so, whether such excessive speed was a proximate cause of appellee's injuries. The jury answered both issues in the affirmative.

Appellant says that there was no evidence to support submission of the issue. Appellee himself testified that prior to the time of the accident the train was going too fast—at a dangerous rate of speed after it passed Mile Post 221 and had reached the place of the accident where the speed limit was 35 miles per hour. The engineer and front-end brakeman testified in a deposition that the train was traveling at a speed of about 45 miles per hour round a curve in a 35-mile an hour speed zone at the time of the derailment. At the trial they tried to repudiate their deposition testimony by saying that in their estimation the train was not traveling over 35 miles per hour. Ap-

pellant's nineteenth and twentieth points are overruled.

■ In its twenty-first point appellant objects to the submission of an issue concerning the duty of appellant to furnish a safe place to work. In its twenty-second and twenty-third points appellant complains of the submission in connection with the above issue of this instruction:

"In connection with Special Issues Nos. 3 and 4 you are instructed that the defendant railroad company was under a duty on the occasion in question to exercise ordinary care to furnish plaintiff with a reasonably safe place in which to work and this duty was a continuing and non-delegable duty even though plaintiff's duties at the time or place in question may have been fleeting and infrequent."

It was not error for the court to submit the issue and give the instruction. Appellee's cause of action is based on substantive rights given to him under the Federal Employers' Liability Act. It is well settled that appellant had a continuing, non-delegable duty to furnish appellee a safe place to work. Matters of local legal procedure will not be allowed to restrict the establishment and assertion of such substantive rights. Dice v. Akron, Canton & Youngstown RR. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398; Williams v. Atlantic Coast Line R. Co., 190 F.2d 744; Bailey v. Central Vermont Ry., Inc., 319 U.S. 350, 63 S. Ct. 1062, 87 L.Ed. 1444; Brown v. Western Ry. of Alabama, 338 U.S. 294, 70 S.Ct. 105, 94 L.Ed. 100; Arnold v. Panhandle & S. F. Ry. Co., 353 U.S. 360, 77 S.Ct. 840, 1 L. Ed.2d 889; Texas & New Orleans RR. Co. v. Arnold, Sup., 388 S.W.2d 181; Missouri-Kansas-Texas RR. Co. v. Shelton, Tex.Civ.

2. The Veterans Administration records do contain a statement that one doctor in 1948 "was of the opinion that patient had a mild pes cavus", that is, a mild case of flat feet, which was congenital. But appellee has had numerous subsequent physical examinations and so far as the record before us shows, none of these subsequent examinations disclosed flat feet. And appellee successfully held down his job as a brakeman for many years. He testified that he does not believe he has flat feet.

App., 383 S.W.2d 842, Cert. den., 382 U.S. 845, 86 S.Ct. 54, 15 L.Ed.2d 85 (Oct. 11, 1965). Appellant's twenty-first, twenty-second and twenty-third points are overruled.

Finding no reversible error presented by any of appellant's points on appeal, we affirm the trial court's judgment.

Affirmed.