(122 So. 429)

CENTRAL OF GEORGIA RY. CO. v. GARNER. (6 Div. 956.)

Supreme Court of Alabama. May 9, 1929.

Rehearing Denied May 30, 1929.

Nesbit & Sadler, of Birmingham, for appellant.

---

[1] 218 Ala. 182.

442

Black & Fort and Fort, Burton & Jones, all of Birmingham, for appellee.

BROWN, J. This action is by the appellee under the Federal Employers' Liability Act (U. S. Comp. Statutes, §§ 8657–8665; 45 US CA §§ 51–59), and as originally brought was against the Central of Georgia Railway Company, the Southern Railway Company, and the Alabama Great Southern Railway Company.

On the trial the last named was stricken by amendment to the complaint, and the court, through the affirmative charge requested by it, directed a verdict in favor of the Southern Railway Company, and submitted the case to the jury as to plaintiff's right to recover against the Central of Georgia Railway Company. The jury returned a verdict in favor of the plaintiff, assessing his damages at $15,000, and on this verdict the court entered judgment against the "defend-

ants," but subsequently, on motion, the judgment entry was corrected nunc pro tunc, so as to show a judgment in favor of the plaintiff against the Central of Georgia Railway Company.

The pleas were the general issue—not guilty, contributory negligence in mitigation of damages, assumption of risk, compromise and settlement in consideration of the payment of $1,300 in full settlement, and release from further liability.

To the pleas 4, 6, and 7, setting up the settlement of the liability and written release from further liability, plaintiff after joining issue on the pleas filed a special replication, alleging that defendant's agent who made the settlement and took the release "did falsely and fraudulently represent unto plaintiff *that the said instrument in writing was a receipt for $1,300 in payment of wages* as agreed upon as hereinbefore set out, and did fraudulently deceive the plaintiff into reliance upon said false and fraudulent misrepresentations; and plaintiff further says that he was deceived, and that he did believe said representations *as to the character of the instrument in writing to be true,* and that he did rely thereon and did sign the same without reading same; and plaintiff further says that he received from said Barber the instrument in writing set out in plea 7 and did indorse his name on the back thereof, *without reading same;* that said last referred to instrument in writing was delivered to him at the time his signature to the instrument referred to in plea 6 was procured, and he, yet believing the false and fraudulent misrepresentations of the said Barber to be true, but acting in full reliance thereon, indorsed the same," etc.

At the conclusion of the evidence the appellant requested the affirmative charge in writing, with hypothesis, directing a verdict in its favor, which the court refused, and it now insists that the refusal of this charge was error for reasons, among others: (1) That the plaintiff failed to meet and carry the burden of proof resting upon him of showing that he and those engaged with him in the work of clearing the wreck on the Central's lines were its employés; and (2) that defendant, by the undisputed evidence, established the truth of its pleas 4, 6, and 7, and that the plaintiff failed in the proof of his replication 3.

■■ The burden of proof, under the peculiar facts of this case, so far as concerns his right to recover against the Central of Georgia Railway Company, was on the plaintiff to show, not only that he was an employé of said defendant, but that those engaged with him in the work of clearing the wreck on the defendant's line of railway were also employés of said defendant. This is so, because if plaintiff's injury was proximately caused by negligence, it was the negligence of some one or the other of those so

engaged. Hull v. Philadelphia & Reading Railway Co., 252 U. S. 475, 40 S. Ct. 358, 64 L. Ed. 670; Robinson v. Baltimore & O. R. Co., 237 U. S. 84, 35 S. Ct. 491, 59 L. Ed. 849; Ill. Cent. R. Co. v. Johnston, 205 Ala. 1, 87 So. 866; Id., 254 U. S. 654, 41 S. Ct. 218, 65 L. Ed. 459.

The evidence is without dispute that the plaintiff was a regular employé of the Southern Railway Company, and worked in its car shops in Birmingham; that he was also one of the Southern's wrecking crew; that the persons with whom plaintiff was working at the time of the injury were likewise employés of the Southern Railway Company; that under a custom prevailing at the time between the Southern Railway Company and the Central of Georgia Railway Company, when a wreck occurred on the lines of either of said railroads and the road on which the wreck occurred desired the services of the wrecking crew of the other, such crew was loaned to the company on whose lines the wreck occurred, for the purpose of clearing the wreck, the borrowing company paying the wages of the crew for the time they were engaged in the service of clearing the wreck, and other expenses incident to the work.

On the occasion of plaintiff's injury, a wreck had occurred on the lines of the Central of Georgia Railway near Childersburg, Ala., between Birmingham, Ala., and Columbus, Ga., and, on request of the Central of Georgia Railway, the Southern Railway loaned the Central of Georgia its wrecking crew and wrecking machinery to clear the wreck, and while plaintiff was engaged in the work of clearing the wreck, he received his injuries. In answer to the interrogatories propounded to the defendants under the statute, they made joint answers to the following, among other interrogatories: "State whether or not you ordered the plaintiff to the scene of the wreck in the vicinity of Childersburg. A. Yes." "State whether or not plaintiff obeyed your orders and went to the scene of the wreck in the vicinity of Childersburg? A. Yes." "State whether or not plaintiff was actually engaged in making a passageway for interstate passenger trains, on last April 7, 1926. A. Yes." "State whether or not plaintiff was so actually engaged at the time he received the physical injury. A. Yes." "State the relation of such duty to his employment by the defendant or defendants. A. Clearing on Central line."

The wrecking crew was composed of the engineer and fireman on the crane, and four men on the ground, including the foreman of the wrecking crew. The evidence also tends to show that there was a crew of trackmen who were engaged in preparing the track ahead of the wrecker. In Linstead, Ex'x, v. Chesapeake & Ohio R. Co., 276 U. S. 28, 48 S. Ct. 241, 72 L. Ed. 453, the following utterances of the Massachusetts court were cited with approval: "It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men became pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work and they are for the time his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking." Farwell v. Boston & Worchester Railroad Corporation, 4 Metc. (Mass.) 49, 38 Am. Dec. 339.

In Linstead's Case, the Big Four Railway Company loaned to the Chesapeake & Ohio Railway Company an engine, caboose, and the train crew, as a reciprocal service, and this engine, caboose and crew were used by the Chesapeake & Ohio in moving freight over its own lines, under the supervision and control of its trainmaster. Under these circumstances the Supreme Court of the United States held that the train crew were employés of the Chesapeake & Ohio Railway Company, within the contemplation of the Federal Employers' Liability Act, and that that company was liable for negligence causing the death of Linstead, the conductor. Linstead v. Chesapeake & Ohio R. Co., 276 U. S. 28, 48 S. Ct. 241, 72 L. Ed. 453.

Here, the wrecking crew was loaned by the Southern Railway Company to the Central of Georgia, as a reciprocal service, the Central of Georgia paying the wages of the employés, and other necessary expenses, to clear the wreck on the Central lines, a work which was necessary to the operation of its business, over which it had the power of control, unless this control was relinquished to

444

another, and, in the light of these authorities, we are of opinion that the evidence was sufficient to warrant the jury in finding that the work was done under the control and supervision of the Central of Georgia Railway Company, and that the plaintiff and the others constituting the wrecking crew were pro hac vice employés of said Railway Company. See, also, Illinois Central R. Co. v. Johnston, supra.

The evidence proves, without dispute, the defendant's pleas 6 and 7, and, unless the evidence proves or tends to prove the averments of the plaintiff's replication to these pleas, the refusal of the affirmative charge requested by the defendant, Central of Georgia Railway, was error. Zadek v. Forcheimer, 16 Ala. App. 347, 77 So. 941; Alabama National Bank v. Halsey, 109 Ala. 196, 19 So. 522; Marsh v. Elba Bank & Trust Co., 205 Ala. 425, 88 So. 423; Columbus Electric & Power Co. v. Downs, 214 Ala. 104, 106 So. 593.

The material averments of the replication have been stated; these averments go to the fraud on the part of the defendant's agent in misrepresenting to the plaintiff the *contents* of the writing—that it was a receipt for $1,300 in payment of wages. These averments were not only material, but they were essential to the sufficiency of the replication as an answer to the pleas. Beck & Pauli Lithographing Co. v. Houppert & Worcester, 104 Ala. 503, 16 So. 522, 53 Am. St. Rep. 77; Clarady v. Abraham, 174 Ala. 130, 56 So. 720; Hartford Fire Ins. Co. v. Ingram, 216 Ala. 111, 112 So. 424; Windham v. Wilson, 210 Ala. 330, 98 So. 15; Burroughs v. Pacific Guano Co., 81 Ala. 255, 1 So. 212; Prestwood v. Carlton, 162 Ala. 327, 50 So. 254.

When the plaintiff came to testify as to the execution of the release, while he states that Barber told him during the negotiation and before the release was signed that he had come to settle with plaintiff for his lost time and was not going to settle with him for the personal injury, that he could see about that later, he positively affirmed "he *did not* tell me that it was a release; he did not tell me what it was. He absolutely did not make any statement to me as to the contents of the paper. He handed me the paper spread open and I signed it, and then he gave me the check for $1,300, and I got the money on it after Mr. Tyner (the subscribing witness) signed the paper." The plaintiff's evidence shows that he was under no mental disability; that he could read and write and was in no way prevented from reading the release before it was signed. The evidence further shows that the check had written on its face in a plain, legible hand, "In settlement of personal injuries at Childersburg, Alabama, on April 7th, 1926"; that this check was delivered to the plaintiff; that he retained it in his possession until the following day, when he indorsed and cashed it; that he looked at it more than once before he cashed it, and hence had full opportunity to learn of its contents.

This evidence not only fails to prove the averments of the replication, but clearly establishes the fact that plaintiff's signature was not obtained by a fraudulent representation that the release was a receipt for wages. The plaintiff has clearly failed to meet and carry the burden he assumed by the averments of his replication, and the defendant was due the affirmative charge on this issue.

We deem it unnecessary to treat the other questions argued. For the error committed in refusing the affirmative charge, the judgment must be reversed.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.