(133 So. 270)

## INTERNATIONAL·HARVESTER CO. et al. v. WILLIAMS.

### 6 Div. 741.

Supreme Court of Alabama.

March 12, 1931.

Rehearing Denied April 9, 1931.

Coleman, Coleman, Spain & Stewart, of Birmingham, and Huey, Welch & Stone, of Bessemer, for appellants.

Perry, Mims & Green, of Bessemer, for appellee.

592

**BROWN, J.**

Elgin Williams, Jr., a boy, age seven years, on the last anniversary of his birth, September 15, 1929, after alighting from a school bus in which he had been riding on his way home from school on November 4, 1929, while crossing a public highway near his home, came in collision with a passing truck, and as a consequence both bones in his left leg were broken a few inches below his knee.

The boy and his father each brought suit against the defendant; the boy claiming damages for the personal injury, the father claiming damages for loss of services of his minor son and expenses incident to the treatment of his injury. Both suits, by agreement of the parties, were tried at the same time before the same jury, resulting in a verdict and judgment for the plaintiffs, and the defendants have appealed. The questions presented by the assignments of error insisted upon are the same in both cases, and have been considered together.

The evidence is without dispute that Elgin Williams, Jr., was one of several school children who had been transported to the place of the injury in a school bus, and from three to five minutes before the injury the bus, which had been proceeding north along the highway, parked at one of the regular stopping places to allow some of the children to disembark, and that from seven to ten children, ranging in age from seven to seventeen, alighted from the bus and were separating to go to their respective homes.

Elgin's home was on Oak street, which intersected the highway on the west immediately opposite from the point where the bus stopped. Oak street did not cross the highway, but led off therefrom in a southwesterly direction. Elgin was the first to alight from the bus, and immediately passed around the rear thereof and, in his effort to cross the highway on his way home, came in collision with the passing truck immediately opposite the driver's seat. When he was last observed by the plaintiff's witnesses, he had passed behind the bus and was running across the highway between its center and the east margin, going west. The plaintiff's witnesses did not see the collision and the bus proceeded north without the driver or occupants thereof learning of the collision. The time of the collision was about 4 o'clock in the afternoon of November 4, 1929.

The evidence offered by the plaintiff further goes to show that the truck was proceeding south to the right of the center of the highway, at a rate of speed from twenty-five to thirty miles per hour, and that no signals of its approach were given as it approached and passed the place of the collision; that it ran beyond the point of the collision about seventy-five feet before coming to a stop.

The evidence offered by the defendants goes to show that the driver of the truck with his companion were on their way from Birmingham to Carrolton in Pickens county; that they were strangers and unfamiliar with the highway over which they were traveling; that the driver observed the bus when within one hundred yards of it; that it appeared to be an interurban passenger bus; that there was nothing in its appearance to indicate that it was a school bus; that as the truck approached the bus, he observed only one boy who was standing near the front end of the bus; that he glimpsed the boy, Elgin, just as he ran or walked against the passing truck.

The defendants' evidence further goes to show that the horn on the truck was sounded when the truck was within twenty to twenty-five feet of the bus; that as the truck approached the bus its speed was reduced from twenty miles per hour, which was its maximum speed, and when the collision occurred it was moving about five miles per hour, and was stopped within a few feet.

■ The judgment here is that the evidence and its conflicting tendencies presented a question for jury decision, as to whether the conduct of the driver of the truck in approaching and passing the school bus, while engaged in discharging its passengers, was in consonance with the conduct of a reasonably prudent man. If, as some of the evidence tended to show, the operator of the truck approached said bus without signals and at such rate of speed as that he was not able to observe the situation and avert the collision, this would warrant a finding that he was guilty of negligence. Reaves v. Maybank, 193 Ala. 614, 60 So. 137. On the other hand, if he discovered that a number of children were alighting from the bus and separating, going in different directions, and this was for the jury, and failed to exercise the care of a reasonably prudent person to avoid injury, this would constitute negligence. Reaves v. Maybank, supra.

The appellants however insist, notwithstanding the evidence may warrant a finding of negligence on the part of the operator of the truck, that they were entitled to the affirmative charge, which was requested by them in several different forms and refused by the court.

Their first insistence in this respect is that the evidence fails to show causal connection between such negligence and the injury, in that it appears that the child ran against the side of the passing truck.

■ It is well settled that to warrant a recovery for negligence, causal connection between the injury and the negligence must appear, and that the negligence must be a proximate cause of the injury. Alabama Power Co. v. Bass, 218 Ala. 586, 119 So. 625, 63 A. L. R. 1.

■ Where the negligent act is one of omission, causation is established when it appears that the doing of the act would have prevented the result. On the other hand, if the result would have happened just as it did, regardless of the omission of duty, the failure to perform the duty is not a factor, and causal connection would be absent. Alabama Power Co. v. Bass, supra.

In the circumstances developed by the evidence this was also a question for the jury.

Appellants further insist that the act of the boy in running against the truck was a new force or power intervening, sufficient to break the natural sequence between the negligence of the operator of the truck and the injury, and this must stand as the sole proximate cause of the injury.

■ If the act of the child was such as in the circumstances a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably possible to follow, if it had occurred to his mind, it cannot be said to be a new force or power, sufficient in law to interrupt the sequence between the negligence and the injury. Armstrong, Adm'x, v. Montgomery Street Railway Co., 123 Ala. 233, 26 So. 349; Alabama Power Co. v. Bass, supra. An apt illustration as to what constitutes such intervening cause may be found in Williams, Adm'r, v. Woodward Iron Co., 106 Ala. 254, 17 So. 517.

■ Moreover, in the absence of evidence showing the boy was above the average for his age, in care, judgment, and discretion, his act cannot be said to be negligent, nor was it otherwise wrongful, and it is well settled that where the original act was wrongful, and would naturally and according to the ordinary course of events prove injurious to another, and does result in injury through the intervention of causes which are not wrongful, the law refers the injury to the wrongful or tortious act. Thompson v. Louisville & Nashville R. Co., 91 Ala. 496, 8 So. 406, 11 L. R. A. 146; Burnett v. Alabama Power Co., 199 Ala. 337, 74 So. 459; Cook v. Continental Ins. Co., 220 Ala. 162, 124 So. 239, 65 A. L. R. 921; Birmingham Ry. L. & P. Co. v. Landrum, 153 Ala. 192, 45 So. 198, 127 Am. St. Rep. 25.

■ Another contention is that there is a material variance between the averments and the proof. The basis of this contention is that the complaint avers that defendants' agents or servants negligently caused the truck "to run upon or against" the said Elgin Williams, while the proof is that Elgin ran against the truck. The evidence is without dispute that the truck was moving forward when it came in contact with the boy, and though the boy was also moving forward, at right angles with the course of the truck, nevertheless the truck, in a sense, ran against the boy. To justify a recovery it was not necessary that there should be an exact correspondence between the averments and the proof—the plaintiff had the burden of proving the substance of the issue. Wilson v. Smith, 111 Ala. 170, 20 So. 134; City of Bessemer v. Pope, 212 Ala. 16, 101 So. 648; St. Louis & S. F. Ry. v. Mills, 220 Ala. 107, 124 So. 231.

The court also refused the affirmative charge requested by the defendant International Harvester Company of America, and it now insists that in this ruling the trial court committed error.

Relevant to this question the evidence is that the International Harvester Company is a corporation organized under the laws of the state of New Jersey, and is engaged in the business of manufacturing agricultural implements and motor trucks. It maintains an agricultural extension department that sends out lecturers to lecture to farmers, and, as some of the evidence tended to show, to propagate the use of farming implements. The driver of the truck and his companion were employees of said extension department as lecturers, and were on their way to deliver a course of lectures in Pickens county in this state.

The other defendant, the International Harvester Company of America, is a corporation organized under the laws of Wisconsin, and is engaged in business in this state, with its headquarters in the city of Birmingham. To use the language of the witness Kraker, it "is a distributor or sales organization" for the other defendant.

On the occasion in question the defendant International Harvester Company of America furnished the truck and the fuel.

The witness Kraker further testified: "The International Harvester Company of America employs the Agricultural Extension Department of the International Harvester Company to go on short courses. But the work is done under the International Harvester Company Agricultural Department. The International Harvester Company, Extension Department, pays the salaries."

The nature of the employment of the Agricultural Extension Department by the International Harvester Company of America, whether as an independent contractor or agent or servant, is a matter left to inference, and the tendency of the evidence supports the conclusion that said Extension Department was in the service of both defendants, and in the furtherance of their business and subject to their orders. Alabama Power Co. v. Bodine, 213 Ala. 627, 105 So. 869; Sanders v. Gernert Bros. Lumber Co., 221 Ala. 469, 129 So. 46; Central of Ga. Ry. Co. v. Garner, 219 Ala. 441, 122 So. 429.

The nature of said employment was a fact peculiarly within the knowledge of the defendants, and "it has become a well established rule that where evidence which would properly be a part of a case is within the control of the party whose interest it would naturally be to produce it, and without satisfactory explanation he fails to do so, the jury may draw an inference that would be unfavorable to him." 10 R. C. L. p. 884; Stocker v. Boston & Maine R. R. (N. H.) 151 A. 457, 70 A. L. R. 1320. Blue v. First Nat. Bank of Elba, 200 Ala. 129, 75 So. 577.

The affirmative charge requested by the defendant International Harvester Company of America, and charges 27 and 28, were therefore well refused.

The driver of the truck had no right, as a matter of law, to assume that the boy would or would not "step or run suddenly across the road." His duty was to exercise reasonable care. Charge E was refused without error.

There was an absence of evidence showing that the boy was above the average in care, judgment, and discretion and is presumed incapable of contributory negligence. Birmingham R. L. & P. Co. v. Landrum, supra. Charges H and O were well refused.

Charge K was not only argumentative, but sought to leave a question of law to the decision of the jury, whether the "defendants breached a duty owing to the plaintiff," without defining the duty.

Charges T and U do not state propositions of law, but matters of fact, and error will not be predicated on their refusal.

The defendants had the affirmative charge as to the wanton count, and charges A–7, A–8; A–9, and A–15 were refused without error.

The principles heretofore stated justify the refusal of charges A–18, A–19, and A–26. Charges A–20 and A–21 were invasive of the province of the jury.

It is well settled that the parties plaintiff in civil action, on proper and seasonable motion, are entitled to have the jurors, from whom the trial jury is to be selected, qualified as to their "relation to, or interest in any insurance company which would be liable in whole or in part, for any judgment that might be rendered against the defendant," and under our system of administering justice, the proper time and place for presenting such motion is in open court, and unless it appears that the conduct of counsel in presenting such motion is attended with circumstances calculated to prejudice the rights of the defendant, it cannot be made the basis for grounds for motion for new trial or error on appeal. Gammill v. Culverhouse, 217 Ala. 65, 114 So. 800; Cooper v. Auman, 219 Ala. 336, 122 So. 351.

There is nothing in the record to warrant the conclusion that the conduct of counsel in requesting the court to qualify the jurors was attended with bad faith or that there was anything in his conduct from which prejudice to the defendants resulted. Cooper v. Auman, supra.

The cross-examination of the witness Kraker and witness Hannon appears in the bill of exceptions in narrative form. The questions put to them on such examination, to serve as a predicate for impeaching testimony in the form of contradictory statements, are not shown by the bill of exceptions. This court is therefore not in a position to determine whether or not the predicates were sufficient to authorize the evidence offered in rebuttal to impeach these witnesses.

We have examined the other questions in respect to the admission of evidence and the argument of counsel, and find nothing in these questions that would warrant a reversal, or that requires further statement.

Nor do we find any merit in the assignments of error predicated on exceptions to the court's oral charge, or in the order of the court overruling the motion for a new trial.

The record being free from reversible error, an affirmance of the judgment will be entered.

Affirmed.

ANDERSON, C. J., and SAYRE and THOMAS, JJ., concur.