44 So.2d 759

### SMITH v. STATE.

### 6 Div. 974.

Supreme Court of Alabama.

Feb. 2, 1950.

Rehearing Denied March 9, 1950.

Chester Austin, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Neil Metcalf, Asst. Atty. Gen., for appellee.

BROWN, Justice.

This appeal is from a decree of the Circuit Court of Jefferson County, in Equity, denying the appellant Ralph Smith's claim to "One Ford Club Coupe Automobile, License No. 57C-1238, Motor No. A-2184615, Model No. 1948," captured by agents of the State Alcoholic Beverage Control Board while the same was being used by and "in possession of:" Joe Morrison alias Leon Marvin Smith, W. K. Barfield and John W. Smith, in the transportation of what is commonly known as "wildcat whiskey" and characterized in the statute, Code 1940, Tit. 29, § 93, as "prohibited liquor," and condemning said automobile as contraband and forfeiting the same to the State.

The evidence is without dispute that the automobile while in the possession of W. K. Barfield and Joe Morrison alias Smith, a son of John W. Smith, who was present at the time of the seizure and as the evidence goes to show participating in an attempt to deliver the prohibited liquor to two men of the negro race on a vacant lot covered by high weeds in the City of Birmingham in the night time. The automobile was seized July 22, 1949, on 5th Avenue between 7th and 8th Streets.

The evidence offered by the state goes to show that Barfield was convicted and sentenced to serve six months for violating the liquor laws in Georgia and was "sent up" from LaGrange, Georgia, claimant's home town. That Barfield, John W. Smith and Morrison alias Smith on the preliminary hearing before a committing magistrate were bound over to await the action of the grand jury for transporting prohibited liquors in quantities of five gallons or more.

The only evidence offered by the claimant, appellant here, to sustain his claim to the automobile was his own testimony and a bill of sale purporting to have been given in Troup County, Georgia, reciting $1275, purporting to have been signed by "Charles

J. Smith, address Vernon Road," on June 16, 1949, and notarized by "Mrs. Georgia Bel Jordan, N. P." seal impressed. The bill of sale described "One 1948 Ford Club Coupe Motor No. 899A-2184615, Model 1948, Serial No. * * * Motor No: 899A-2184615 License No. * * * Sold 'as is'," with covenants of warranty.

Claimant testified as a witness in his own behalf that his name was Ralph Smith, that he lived in LaGrange, Georgia; that he was in the used car business for himself. That he had been in such business for about a year. That before he opened up or purchased said used car business he worked in the textile mills in LaGrange, Georgia and received $50 per week. That he had worked six years in the mills, had lived in LaGrange seven years. He was here asked:

"This Ford coupe that was involved in this case here, I will ask you to look at that bill of sale and see if you purchased that —if that is the bill of sale where you purchased that car this year? (Counsel hands document to witness) A. That is right; yes, sir.

"Q. From Charles J. Smith? A. That is right. * * *

"Q. Is that the bill of sale you purchased and which was acknowledged before a notary public? A. That is right.

"Q. Is that the regular form used in the State of Georgia? A. Yes, sir; it is.

"Q. Is that the purchase price of it, $1275.00? A. Yes, sir; that is right.

"Q. Did you purchase some other cars from him at the same time? A. Yes, sir, I did.

"Q. How many, do you know? A. The 1948 Plymouth for one, and another '48 Ford Club Coupe, gray; 1940 Chevrolet. That is about all. Those are three more junkers."

At this juncture the defendant's counsel offered the bill of sale in evidence and the following occurred.

"The Court: That is the Ford car you are talking about?

"Mr. Austin: Yes, sir.

"The Court: That is June 22nd?

"Mr. Austin: No, sir; Judge, June 16th.

"Mr. McCall: Judge, I object to this because this motor number is not the motor number that is listed on this coupe automobile that we have.

"Mr. Austin: It is the same with the exception of 8995A.

"Mr. McCall: It is not the same automobile.

"Mr. Austin: We say it is.

"The Court: What is the number on the alleged bill of sale?

"Mr. McCall: The number on the alleged bill of sale he offers in evidence is motor number 899-A-2184615.

"The Court: The other?

"Mr. McCall: The other is A2184615.

"Mr. Austin: And it has the same thing except this 899. We say it is the same car.

"The Court: 899, that is a part of the number, isn't it?

"Mr. Austin: Judge, there is an 899 on his form and he has 899A.

"Mr. McCall: Here is the motor number, A2186415.

"The Court: Had that been proven by the preceding witness that that was the number of the motor?

"Mr. McCall: Yes, sir.

"The Court: Read the number there.

"The Witness: 899A2184615.

"The Court: I will sustain the objection. * * *."

The claimant testified further that on the day he bought the Ford Coupe from Charles J. Smith he bought "this office equipment from the same man." That he (claimant Smith) had a place of business in Lanette, Alabama, a cafe. That he operated the cafe in addition to the used car business in LaGrange. That he drove the car to Lanette, Alabama. That "the car gave me trouble, and I left it with Tom Carmichael and asked him to get it fixed. He said he would. I left the next day going to Florida." That he (claimant) understood that Barfield worked with Carmichael. That "He (Carmichael) told me he could get it fixed. He had a man working for him there, W. K. Barfield." That he had known Barfield for a short while, "about three

months, I guess." He left it there for the purpose of having it fixed. In short, the claimant testified in response to leading questions that he returned to LaGrange, got another car and went to Florida and stayed about a week. That he did not give Barfield or any one else permission to use this car; that he had no knowledge or information of any type that any one was going to use his car for hauling liquor or other purposes. That the other man was Tom Carmichael and that he didn't give permission to either one to use his car. That he left it for the express purpose of getting it repaired.

Mr. Austin, claimant's counsel, again offered the bill of sale in evidence. The court observed: "I sustain the objection to that because that is not in evidence so you couldn't consider that. If I am wrong I will be corrected, but it is not in evidence, so you can't consider that." The claimant further testified that he had never been arrested for anything in his life.

On cross-examination by Solicitor McCall the claimant testified, to state his testimony in substance, that up until last year he worked for Calloway Mills, LaGrange, Georgia, as a weaver for about $50 per week. That he quit about a year ago. That he had known his Uncle John W. Smith all witness' life. That Leon Smith alias Joe Morrison was his first cousin, the son of John W. Smith. That claimant's cafe is the "Club Fifth Avenue," that he has two employees working in the cafe, that Lanette and LaGrange are eighteen miles apart. That he had been operating the used car business about a year; that he bought the place, that no one was associated with him at the time, that he bought the cafe from his cousin Charlie Smith, that he worked for his cousin until he bought the place, that he paid a thousand dollars for it in July, 1949. That he bought his (Charles') cars and paid him the money for them. That he did not buy a license for the Ford car, that there was an Alabama license on it. That he did not have it transferred to him. That he bought the car to sell. That he drove it to Alabama, to Lanette. That he knew Barfield but did not see him to talk to him. That he talked to Tom Carmichael. "I asked Tom Carmichael to get it fixed." That he did not talk to Leon Smith. That he left the car with Tom Carmichael. That when he came back to Carmichael's where he left the car it was gone. That he did not have warrants issued for the arrest of the parties who took the car, that they were already arrested.

On redirect examination by Mr. Austin, claimant testified that neither John W. Smith nor Leon Smith lived in LaGrange or Lanette. That "neither one of them were around that garage—Tom Carmichael's" garage where he left his car. That he never had any conversation with John W. Smith or Leon Smith pertaining to the Ford coupe.

He was then asked by his counsel, "Did Tom Carmichael have a reputation for dealing in prohibitive liquors?" to which he answered, "No, sir.

"Q. And you knew nothing about Barfield's dealings in any way? A. No, sir.

"Q. He did tell you Barfield was a mechanic there? A. That is right, with him."

During the cross-examination of the claimant, the following took place.

"The Court: Did you get a receipt for that thousand dollars you paid for his interest in that business over there?

"The Witness: Bill of sale receipt.

"Mr. Austin: That bill of sale is what we offered in evidence.

"The Court: The bill of sale is for this particular Ford?

"The Witness: *The bill of sale is for the place.*

"Mr. Austin: This bill of sale which we offered in evidence—

"The Court: The bill of sale you offered was for the Ford?

"Mr. Austin: It acknowledges receipt for it in the face of it (Thereupon, Mr. Austin read the bill of sale to the Court). * * *"—[Italics supplied.]

The testimony was given in open court in the presence of the presiding judge and it has infirmities viewed from the standpoint of the claimant which warranted the

court in finding the facts against him. The claimant drove the car with the Alabama license on it from LaGrange, Georgia, to Lanette, Alabama, and the most his evidence shows was that he had trouble with it. The testimony does not show any mechanical defects in the car nor what part or parts needed repair. There is no evidence of what was necessary to "fix it" or what Tom Carmichael agreed to do to it.

Moreover the claimant offered a bill of sale showing a different motor number and if the discrepancy in the writing was subject to explanation, the burden was on the claimant. International Harvester Co. v. Williams, 222 Ala. 589, 133 So. 270. The evidence shows that he had had some experience in handling automobiles, was operating a used car business buying and selling cars, and his failure to enlighten the court as the trier of the facts, warranted the court in finding against him. Furthermore the claimant gave contradictory testimony as to what the bill of sale was given for. The testimony shows that he first said it was for this Ford Coupe, which the state was seeking to condemn, and subsequently testified that the bill of sale was given to cover the purchase of the place of business bought from his cousin Charlie Smith.

The evidence further shows that the automobile was found in the possession of claimant's close relatives and the only mechanic mentioned in the testimony who was to do the "fixing" and the claimant had never spoken to them about its use before or since it was seized, calling on them to account to him for its possession, use and seizure.

The only error assigned on the record is, "that there is error of the trial court [in] the final decree rendered in this cause on the 7th of September, 1949."

After full examination of the testimony we are content to hold that said assignment of error has not been sustained.

Affirmed.

FOSTER, SIMPSON and STAKELY, JJ., concur.

LAWSON, J., dissents.