BRYAN, Judge.
The plaintiff below, Caleb Silbernagel (“Caleb”), by and through his father and next friend, Sean Silbernagel (“Sean”), appeals from a summary judgment in favor of the defendant below, Maranatha Baptist Church, Inc. (“Maranatha”). We affirm.
Sean, as Caleb’s father and next friend, sued Maranatha, alleging that, on August 31, 2005, when Caleb was approximately three months old, the employees of the day-care facility operated by Maranatha negligently or wantonly caused a spiral fracture of the femur bone in Caleb’s right leg. Answering, Maranatha denied liability-
Subsequently, Maranatha moved for a summary judgment on the grounds (1) that Sean could not prove that Marana-tha’s employees breached a duty of care or that such a breach proximately caused Caleb’s fractured femur, two of the essential elements of the negligence claim, and (2) that Sean could not prove that Marana-tha’s employees consciously and intentionally did some wrongful act or omitted some known duty or that such act or omission proximately caused Caleb’s fractured femur, two essential elements of the wantonness claim.[1] In support of its summary-judgment motion, Maranatha submitted, among other things, the deposition testimony of Courtney Roberts, the Maranatha employee who had been primarily responsible for caring for Caleb on August 31, 2005; the deposition testimony of Dr. Michael Jeffery Ramsey, the pediatrician who had examined Caleb immediately after he was allegedly injured on August 31, 2005; and Dr. James Brett Simpson, the ortho-paedic surgeon who had treated Caleb’s fractured femur.
Roberts testified as follows. When Roberts arrived at Maranatha on the morning of August 31, 2005, Christy Proctor Brin-son, another Maranatha employee, was taking care of Caleb. Caleb was “a little fussy,” and Proctor told Roberts that Caleb’s mother had said that Caleb was “fussy” when she had dropped him off at Maranatha that morning. Roberts gave Caleb a bottle of milk, but he continued fussing. She then laid Caleb in a bed so that she could tend to the other six children in her care that morning, but Caleb began crying. She picked Caleb up and held him and then placed him in a swing so that she could tend to the other six children. Caleb fell asleep in the swing but *601 soon woke up crying. When Caleb woke up crying in the swing, she lifted him out of the swing and discovered that his right leg was behind his left leg. After taking Caleb out of the swing, Roberts sat and rocked Caleb. Caleb was fine as long as she sat and rocked him, but he would become upset if she left him to check on the other children. Roberts thought that Caleb was sick, so she called for one of the other Maranatha employees to help her. A Maranatha employee named Tina came and held Caleb, but he did not stop crying, so Tina gave Caleb back to Roberts and went and got Tracy Taylor, an administrative employee at Maranatha, who contacted Caleb’s mother, Amber Silbernagel (“Amber”). Amber told Taylor that Caleb had an ear infection and that she should give Caleb Tylenol, a nonprescription pain reliever, and call back if Caleb was not better in an hour. Taylor gave Caleb Tylenol, but he did not improve. Caleb’s mother came and got Caleb and took him to his pediatrician.
Dr. Ramsey testified as follows. Caleb’s parents brought Caleb to see Dr. Ramsey on August 31, 2005. Dr. Ramsey examined Caleb and ordered X-rays, which showed a fracture of Caleb’s right femur. Dr. Ramsey referred Caleb to Southern Bone & Joint Specialists, P.C., a group of physicians who specialize in orthopaedics, for treatment. Dr. Ramsey could not determine with a reasonable degree of medical certainty what had caused the fracture of Caleb’s femur or when the fracture had occurred.
Dr. Simpson testified that he had treated Caleb’s fracture by placing him in a spica cast. With regard to the cause of the fracture of Caleb’s femur, Dr. Simpson testified as follows:
“Q. All right. You spoke briefly on the elasticity of this bone in a child in this age. Is there any way that you can describe what type of force it would take to break a bone, the femur bone, in a three-month old? Anything—
“A. It would have to be a traumatic injury, such as a twisting injury to the leg where a child is picked up and twisted, or I’ve seen them when parents or grandparents are carrying the child and fall on top of the child. Or if an older sibling falls on top of the leg, I’ve seen that. Or if the child is dropped.
“Q. Right. It would have to be some kind of force?
“A. It has to be a force obviously, because this child can’t — he was laying on his back, so he can’t generate the force to fracture his femur. Some outside force has to do it.
“Q. Have you ever cared for a child that had his leg broken after he had been put in a swing, that you can recall?
“A. After he was put into a swing and the swing — what happened to the swing?
“Q. As in the child’s leg gets bent up behind him in some fashion.
“A. I would assume that that would be unusual for that history, I mean, it’s a traumatic injury to break a femur, even in a three-month-old.
“Q. Well. In this case, there is — we feel that this child was put into a swing at this day care with such force that it broke his leg. And we’ve had someone actually testify that the leg was bent back under the child. In that scenario, would it be possible for that bone to be broken?
“A. I would find it unlikely. I mean, I — it needs to be a traumatic force. If you’re just trying to sit — the child’s joints are very elastic, you know, and you can bring their heels up over their head and you can get their legs extended to flex. It would seem to me it would *602 be a force where something came down on top of that leg.
“Q. Right.
“A. Plus all the — this child was three months old, so it had to be a swing that — actually one of those recumbent-type swings, you know, that you don’t sit them in and the swing starts, you have to hold the child — he has to be able to sit to ride those bigger, older child swings.
[[Image here]]
“Q. Dr. Simpson, I believe your testimony has been that it’s unlikely, in your medical opinion, that placing this child into a swing at this age at the day care would cause a fracture to the femur; is that correct?
“A. Right.
[[Image here]]
“Q. If the person that was putting that child in the swing was agitated because there were multiple children in the room, and she, in an anger state, was to slam the child down into that swing, is it possible that the bone could be broken? “A. Well, if you’re slamming some child down, yes. But, I mean, if you’re placing them down and their leg is trapped up underneath them, is caught behind them as they’re being put down, I don’t think you could fracture it.”
In opposition to the summary-judgment motion, Sean submitted, among other things, the deposition testimony of Amber; Brinson, the Maranatha employee who had received Caleb from Amber on August 81, 2005, and had taken care of him before Roberts arrived that morning; and Taylor, the Maranatha employee who had contacted Amber. Amber testified that she gave Caleb to Brinson on the morning of August 81, that Caleb had not been “fussy” on the morning of August 31 before she gave him to Brinson, and that she had not told Brinson that Caleb had been “fussy” that morning.
Brinson testified as follows. Amber took Caleb out of his car seat and handed him to Brinson on the morning of August 31, 2005. Amber told Brinson that he had been “a little cranky” that morning and that he had not had his bottle yet. Brin-son sat down in the rocking chair and fed Caleb with a bottle of milk for approximately 20 minutes. Caleb did not cry or fuss while he was eating and appeared normal. Brinson then gave Caleb to Roberts.
Taylor testified as follows. On August 31, 2005, the Maranatha day-care facility had a videotaping system designed to record what happened in the day-care facility. The videotaping system was functional on August 31, but no videotape of what happened in the day-care facility that day exists because she forgot to put a videotape in the recorder that day. She has never forgotten to put a videotape in the recorder on any other occasion.
In pertinent part, Sean’s brief in opposition to Maranatha’s summary-judgment motion stated:
“Maranatha also relies heavily on the testimony of Dr. Ramsey and Dr. Simpson as evidence for why it should be granted summary judgment in the case. The problem with the testimony given by the doctors is that other than the condition of Caleb after the injury occurred, their testimony is completely speculative and hypothetical. Both doctors testified that it was medically impossible to determine how or when the right femur fracture occurred, but this revelation does nothing to relieve Mara-natha of responsibility for Caleb’s well-being while he was in their care. This only illustrates that Caleb could very well have experienced the broken leg while in Maranatha’s care, and other *603 evidence regarding Caleb’s demeanor on the day the injury occurred is necessary to determine fault.
“Proof of negligence requires establishment of breach of duty flowing from defendant to plaintiff which proximately causes damage to plaintiff. Thompson v. Lee, 439 So.2d 113 (Ala.1983). Mr. and Mrs. Silbernagel entrusted Marana-tha with the care of their child, Marana-tha breached their duty, and the facts of this case indicate that some traumatic event occurred to Caleb that caused his broken leg. Causal connection between injury and negligence, with negligence as proximate cause of injury must appear to warrant recovery. International Harvester Co. v. Williams, [222 Ala. 589,] 133 So. 270 (Ala.1931). Since the surveillance tape was conveniently not in the recorder on the day the injury occurred, and Caleb cannot speak about the matter because of his age, it becomes difficult to make sense of what happened to Caleb. However, it is clear that some injury occurred to Caleb while he was in Maranatha’s care.
“Proximate cause of an injury is an act or omission that in a natural and continuous sequence of events, unbroken by any new and independent cause, produces an injury or harm, and without which the injury would not have occurred. Morguson v. 3M Co., 857 So.2d 796 (Ala.2003) In short, all evidence gathered in this case illustrates that Caleb was acting normal for any given day when he was placed in Maranatha’s care, the mother of Caleb had no cause for concern when she left him at the daycare facility, and the Maranatha daycare workers had no reason for alarm when he was handed to them. Due to the negligence of Maranatha employees during the first few hours of Caleb’s stay at the daycare, something happened to Caleb of such magnitude that it caused the femur bone of his right leg to break. There are numerous fact questions that should be determined by a jury.”
Following a hearing, the trial court entered an order granting Maranatha’s summary-judgment motion. The order stated:
“The Court is of the opinion that this ease is deficient with respect to causation. The child’s doctors testified that it is unlikely that the spiral fracture was caused by placing the child in the swing improperly. There is no evidence to rebut this proximate cause issue. Therefore, summary judgment is granted in favor of Defendant and against Plaintiff.”
Sean timely filed a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate the summary judgment, which the trial court denied. Sean then timely appealed to this court. Because we lacked jurisdiction, we transferred the appeal to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
“ ‘We review a summary judgment de novo.’ Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002) (citation omitted). ‘Summary judgment is appropriate only when “there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” ’ Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000) (citations omitted).
“ ‘In determining whether the non-movant has created a genuine issue of material fact, we apply the “substantial-evidence rule” — evidence, to create a genuine issue of material fact, must be “substantial.” § 12-21-12(a), Ala.Code 1975. “Substantial evidence” is defined as “evidence of such weight and quality that fair-minded persons in the exercise of impartial *604 judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).’
“Callens v. Jefferson County Nursing Home, 769 So.2d 273, 278-79 (Ala.2000) (footnote omitted). In deciding a motion for a summary judgment, or in reviewing a summary judgment, the court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable factual doubts in favor of the nonmoving party. Bruce v. Cole, 854 So.2d 47 (Ala. 2003), and Pitney Bowes, Inc. v. Berney Office Solutions, 823 So.2d 659 (Ala. 2001). See Ex parte Helms, 873 So.2d 1139 (Ala.2003), and Willis v. Parker, 814 So.2d 857 (Ala.2001).”
Hollis v. City of Brighton, 885 So.2d 135, 140 (Ala.2004).
Sean argues that the trial court erred in granting Maranatha’s summary-judgment motion because, he says, a genuine issue of material fact existed with respect to proximate cause because, he says, the evidence established that Caleb was acting normally when he arrived at the Maranatha day-care facility, that he began exhibiting signs of distress while he was at the Maranatha day-care facility, and that, therefore, his femur must have been broken as a result of something the Marana-tha employees did while he was in their care.
Maranatha submitted evidence indicating that three of the four Maranatha employees who took care of Caleb on August 31, 2005 — Brinson, Tina, and Taylor — did not breach the duty of care they owed Caleb. With respect to Roberts, Marana-tha submitted evidence that, when viewed in the light most favorable to Sean, see Ex parte Patel, 988 So.2d 957, 959 (Ala.2007) (“To determine whether the evidence creates a genuine issue of material fact, ‘[the appellate court] must review the record in the light most favorable to the nonmoving party and must resolve all reasonable doubts against the movant.’ Ex parte Steadman, 812 So.2d 290, 293 (Ala.2001) (citing Pryor v. Brown & Root USA, Inc., 674 So.2d 45, 47 (Ala.1995)).”), indicated that she breached the duty of care she owed Caleb by placing him in the swing with his right leg behind his left leg; however, Maranatha submitted the testimony of Dr. Simpson, which, even viewed in the light most favorable to Sean, negated the existence of a causal connection between Roberts’s breach of care and Caleb’s fractured femur. Consequently, the burden shifted to Sean to submit evidence indicating that one of the Maranatha employees breached a duty of care that proximately caused Caleb’s fractured femur. See, e.g., Harris v. Health Care Auth. of Huntsville, 6 So.3d 468, 472 (Ala.2008) (“ ‘If the mov-ant meets this initial burden [of establishing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law], the burden then shifts to the nonmovant to present “substantial evidence” of a genuine issue of material fact.’ ” (quoting McCutchen Co. v. Media Gen., Inc., 988 So.2d 998, 1001 (Ala. 2008)).
Sean attempted to meet his burden by submitting evidence that, when viewed in the light most favorable to Sean, indicated that Caleb was acting normally when he arrived at the Maranatha day-care facility and that he began showing signs of distress after he arrived at the Maranatha day-care facility. Sean argued that this evidence indicated that “[d]ue to the negligence of Maranatha employees during the first few hours of Caleb’s stay at the daycare, something happened to Caleb of such magnitude that it caused the femur bone of his right leg to break.”
In effect, Sean was arguing that a breach of the duty of care by Maranatha’s *605 employees and proximate cause could be inferred despite the absence of direct evidence establishing the breach and proximate cause. In certain circumstances, the doctrine of res ipsa loquitur allows an inference that the defendant breached the duty of care in the absence of direct evidence of the breach. See Kmart Corp. v. Bassett, 769 So.2d 282, 286 (Ala.2000). In Kmart Corp. v. Bassett, the Alabama Supreme Court explained:
“The res ipsa loquitur doctrine allows ‘an inference of negligence where there is no direct evidence of negligence.’ Ex parte Crabtree Industrial Waste, Inc., 728 So.2d 155, 156 (Ala.1998). For the doctrine to apply, a plaintiff must show that:
“ ‘(1) the defendant ... had full management and control of the instrumentality which caused the injury; (2) the circumstances [are] such that according to common knowledge and the experience of mankind the accident could not have happened if those having control of the [instrumentality] had not been negligent; [and] (3) the plaintiffs injury ... resulted from the accident.’
“Crabtree Industrial Waste, 728 So.2d at 156 (quoting Alabama Power Co. v. Berry, 254 Ala. 228, 236, 48 So.2d 231, 238 (1950), and citing Ward v. Forrester Day Care, Inc., 547 So.2d 410, 411 (Ala.1989), and Khirieh v. State Farm Mut. Auto. Ins. Co., 594 So.2d 1220, 1223 (Ala. 1992)). However, ‘[i]f one can reasonably conclude that the accident could have happened without any negligence on the part of the defendant ], then the res ipsa loquitur presumption does not apply.’ Crabtree Industrial Waste, Inc., 728 So.2d at 158.”
769 So.2d at 286.
However, we cannot consider the issue whether the doctrine of res ipsa lo-quitur applies to the facts of the case now before us because Sean did not argue to the trial court that res ipsa loquitur applies. See Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000) (“[T]he appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment.” (emphasis omitted)).
Given the nonexistence of direct evidence indicating that a Maranatha employee committed a breach of the duty of care that proximately caused the fracture of Caleb’s femur and given the unavailability of the doctrine of res ipsa loquitur due to Sean’s failure to argue to the trial court that that doctrine applies, we cannot hold that the trial court erred in concluding that Sean failed to meet his burden of submitting evidence indicating that a Mar-anatha employee’s breach of the duty of care proximately caused the fracture of Caleb’s femur. Therefore, we affirm the summary judgment in favor of Maranatha.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in part and dissents in part, with writing.

. In Martin v. Arnold, 643 So.2d 564 (Ala. 1994), the Alabama Supreme Court stated:
"To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. Albert v. Hsu, 602 So.2d 895, 897 (Ala. 1992). To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains. Smith v. Davis, 599 So.2d 586 (Ala. 1992).’’
643 So.2d at 567.